345 So.2d 732 (1977)
J.C. PENNEY COMPANY, INC., Appellant,
v.
Richard KOFF, Appellee.
No. 75-2162.
District Court of Appeal of Florida, Fourth District.
March 18, 1977.
Rehearing Denied May 20, 1977.
*734 Paul R. Regensdorf of Fleming, O'Bryan & Fleming, Fort Lauderdale, for appellant.
Samuel L. Heller, Fort Lauderdale, for appellee.
CARLTON, Associate Judge.
Appellant, J.C. Penney, Inc., a Delaware corporation authorized to do business in the State of Florida, appeals a final judgment entered by the trial court denying the appellant's claim for specific performance and for damages and granting appellee's counter-claim for rescision of a sale and purchase agreement and awarding damages pursuant thereto.
On December 17, 1973, appellant, J.C. Penney Company, Inc., entered into a sale and purchase agreement with appellee, Richard Koff, for the sale of certain land totalling 9.615 acres in the City of Lauderdale Lakes, Broward County, Florida. Negotiations had been conducted over a 25 month period prior to this. At the time the sale and purchase agreement was entered into, the zoning applicable to the subject property was R-4A which allowed 28 condominium units per acre. On March 26, 1974, prior to closing, the City of Lauderdale Lakes revised its description of R-4A zoning and provided that such development could not have more than 12 condominium units per acre. Thus making the venture less profitable to appellee. The closing was scheduled to take place April 23, 1974. Shortly before the closing appellee Koff delivered notice of rescision relying on the fact that the zoning had been changed.
Appellant Penney filed a complaint for specific performance and damages on the sale and purchase agreement between it and the appellee Koff. Appellee filed his answer denying appellant's right to specific performance and for damages and filed a counter-claim for the return of funds it deposited under the sale and purchase agreement as well as for the reimbursement of certain other funds spent under a collateral agreement between appellee and the City of Oakland Park, Florida. At the termination of the non-jury trial, the court entered a final judgment denying appellant Penney's request for specific performance, denying appellant's claim for damages and finding for appellee Koff on the counter-claim for the rescision of the sale and purchase agreement. The trial court further awarded appellee the sum of $65,000 in damages. This sum represented $10,000 as a deposit on the sale and purchase agreement and $55,000 for the sum appellee paid on the collateral agreement with the City of Oakland Park, Florida.
Appellee's primary case in the trial court consisted of attempting to show an ambiguity in the sale and purchase agreement and utilizing various parol testimony and prior correspondence in an attempt to support his position for denial for specific performance. The trial court over objections of appellant held that certain provisions in the sale and purchase agreement were ambiguous and allowed into evidence parol testimony and certain prior correspondence between the parties.
The substance of the parol evidence was to establish that appellee because of the change of density requirements between the execution of the contract and the scheduled closing would have a less profitable business venture and that appellee did not intend to be bound by the sale and purchase agreement if there was a change in the density.
Paragraph 1A, 1C and 6 of the sale and purchase agreement must be examined for ambiguities. They are as follows:
"1. AGREEMENT TO SELL AND PURCHASE.
Seller shall sell and Purchaser shall purchase good and marketable fee simple title to the Premises described on Exhibit "A" subject to the following:
"A. Applicable building laws, zoning ordinances, laws and other regulations of any governmental body, subdivision, or agency having jurisdiction existing *735 at the date of closing of title, provided the same do not prohibit the construction of residential type units as permitted under zoning ordinance category R-4A of the zoning ordinance of the City of Lauderdale Lakes, Florida including an apartment complex and recreational amenities including tennis courts, swimming pools and a health club." ... . . (Emphasis added)
"C. All covenants, agreements, restrictions and easements of records; provided the same do not prohibit the construction of residential type units as provided under zoning ordinance category R-4A of the zoning ordinance of Lauderdale Lakes, Florida including an apartment complex and recreational amenities including tennis courts, swimming pools and a health club." (Emphasis added)
6. NO REPRESENTATIONS BY SELLER
"Seller makes and has made no representation, statement, warranty or guarantee as to the conditions, fitness or value of the Premises. The execution of this Agreement has not been procured by any representation, statement, warranty or guarantee not herein contained and Purchaser agrees to accept the Premises `as is' as of the date hereof." (Emphasis added)
Appellee contends that the phrases "as permitted" under Paragraph 1A, "as provided" under Paragraph 1C and "as is as of the date hereof" under Paragraph 6 were ambiguous and therefore, parol evidence should be received by the court to determine what was meant by these phrases.
In reviewing the contract in an attempt to determine its true meaning, the court must review the entire contract without fragmenting any segment or portion. Royal American Realty, Inc., v. Bank of Palm Beach and Trust Company, Fla.App., 215 So.2d 336; International Erectors, Inc. v. Wilhoit Steel Erectors and Rental Service, 400 F.2d 465. In Ross v. Savage, 66 Fla. 106, 63 So. 148 the Supreme Court held:
"The entire instrument must be considered in order to gather the real intent and to determine the true design of the makers thereof. To that end all the different provisions of such instrument must be looked to, and all construed so as to give the effect to each and every of them, if that can reasonably be done..."
"When parties deliberately put their engagement into writing, in such terms as import a legal obligation without any uncertainty as to the object or extent of engagement, it is, as between them, conclusively presumed that the whole engagement and the extent and manner of their undertaking is contained in the writing... . . No other language is admissable to show what they meant or intended, and for the simple reason that each of them has made that to be found in the instrument the agreed text of his meaning and intention."
In the case of Perry v. Woodberry, 26 Fla. 84, 7 So. 483, this principle was stated over seventy years ago and continues to be the law of Florida and does bar the consideration of any extensive evidence to explain or vary the express terms of a contract unless an ambiguity of a contract is first found to fairly appear. See Dimension Four International, Ltd. v. Huskey Realty, Fla.App., 325 So.2d 34; Black v. Clifton, Fla.App., 284 So.2d 465; Graham v. Graham, Fla.App., 277 So.2d 540; Hamilton Construction Co. v. Board of Public Instruction, Fla., 65 So.2d 729; Parkleigh House, Inc. v. Wahl, 97 So.2d 714. The above stated cases taken together adhere to the principle that the courts are allowed to consider extrinsic evidence only when confronting an ambiguous contract provision, and they are barred from using evidence to create an ambiguity to rewrite a contractual provision, or to vary a party's obligation under a contract.
It is necessary to look to the balance of the entire agreement to see what the intent of the parties were. The last clause *736 of Paragraph 6 where "purchaser agrees to accept the premises `as is' as of the date hereof can logically be read in conjunction with Paragraph 1A without ambiguity. There is under Paragraph 1A language specifically relating to the zoning question in that appellant agreed to convey good and marketable title subject to zoning "existing at date of closing of title". The court cannot interpret a general clause, the last phrases of Paragraph 6, in a manner directly contrary to a specific clause, Paragraph 1A. However, there must be an attempt made to give the last phrase in Paragraph 6 a reasonable meaning. Paragraph 6 is obviously a clause inserted to protect the seller by the limitation of representations for which he will be held responsible. There is no ambiguity in that portion of Paragraph 1A or of Paragraph 6 sufficient to justify the admission of parol evidence.
Appellee further contends that the phrases "as permitted" under Paragraph 1A and "as provided" under Paragraph 1C are ambiguous. We disagree. The most compelling language in the contract is in Paragraph 1A itself. It is stated that title must be good and marketable subject to zoning regulations "existing at the date of closing of title." The phrase immediately following states "provided the same" (the regulations existing at the date of closing) do not prohibit the construction of residential type units as permitted under zoning ordinance category R4-A. It is obvious that the phrases "as permitted" under 1A and "as provided" under 1C refer to the type of use the land could be put to for the actual construction of various buildings and complexes under the prior zoning provisions and does not refer to a change of density. This phrase relates to when a future zoning ordinance may prohibit the actual construction of an apartment complex, recreational amenities including tennis courts, swimming pools and a health club.
Therefore, we are of the opinion the agreement to sell and purchase under these phrases is not ambiguous, and extrinsic evidence should not have been admitted to change or alter the express provision in Paragraph 1A.
One other "provision" of this contract is significant. This is the implied provision effected by the application of the doctrine of equitable conversion to an executory contract for the sale of land in Florida. The doctrine of equitable conversion as set forth by the Supreme Court of Florida in Hull v. Maryland Casualty Company, Fla., 79 So.2d 517 states:
(equitable conversion) ... . "becomes operative upon the entry of an agreement to convey title to realty. The vendee immediately becomes the beneficial owner, and the vendor retains only naked legal title as security for payment of the purchase price."
The transfer of possession is irrelevant. See: Insurance Company of North America v. Erickson, 39 So. 495.
In the case of Arko Enterprises, Inc. v. Wood, Fla.App., 185 So.2d 734, a seller and purchaser entered into an agreement to sell real property and prior to the date of the scheduled closing the City of Cocoa Beach instituted eminent domain proceedings. In that case the court held that the doctrine of equitable conversion applied and held that the purchaser became seized of the beneficial title to property upon the execution of the contract. The purchaser took beneficial title and with the beneficial title came the risk of eminent domain. Consequently, the purchaser was obligated to pay the seller the full contract price. In the application of the law set forth in the Arko case, we hold that the person who acquired the beneficial title became the party directly affected by subsequent governmental action. If that action increased the zoning density of the tract or otherwise made it more valuable, the purchaser is enriched. Conversely, however, if the value of the tract is diminished or if the zoning density is reduced, the party to feel the detrimental fact is again the purchaser.
This cause is hereby reversed and remanded to the court below with direction to enter an order for specific performance in behalf of appellant Penney containing such *737 provisions that are not inconsistent herewith.
Reversed.
CROSS, J., and MAURICE PAUL, Associate Judge, concur.