*752
 
 R. LANIER ANDERSON, III, Circuit Judge:
 

 This appeal presents for our decision the issue of whether a certain note executed by D. Dean Barnard (“Barnard”) to First Federal Savings & Loan Association (“First Federal”) is secured by a mortgage that Barnard assumed covering property known as the San Mateo subdivision in Lee County, Florida. Appellant Sonia Uransky, trustee in bankruptcy for the estate of Barnard, filed an adversary proceeding in the bankruptcy court to determine whether the note was secured by the mortgage or was unsecured. The bankruptcy court held that the note was not secured by the mortgage, basing its holding on three alternative grounds.
 
 In re Barnard,
 
 1 B.R. 640 (Bkrtcy.M.D.Fla. 1979). Disagreeing with the bankruptcy court
 
 on each
 
 ground, the district court reversed in an unpublished opinion and held that the note was secured by the mortgage. We affirm the judgment of the district court.
 

 I. FACTS
 

 The genesis of the rather complicated factual underpinnings of this case occurred on May 3, 1974, when First Federal loaned Miles and Mary Brown (“the Browns”) $350,000 under a three-year note. To secure this note, the Browns executed a mortgage on the San Mateo subdivision property owned by the Browns. The mortgage contained a future advances clause, under which “any and all future advances paid by the mortgagee to the mortgagor” would be secured by the mortgage. The mortgage defined the term “mortgagor” to include the mortgagor’s “heirs, executors, administrators, successors, legal representatives and assigns.”
 

 Barnard entered the picture on November 17, 1976, by purchasing the unsold lots in the San Mateo subdivision from the Browns. As part of that transaction, Barnard assumed the outstanding obligation of the Browns to repay $304,925 to First Federal under the San Mateo subdivision mortgage. Thereby, Barnard entered into a “mortgage modification agreement” with the Browns and First Federal. Under that agreement, Barnard agreed to “perform all the mortgagor’s covenants and obligations and abide by all the terms and conditions” of the Browns’ note and mortgage. The mortgage modification agreement, however, made no specific reference to the subject of future advances. This agreement extended the time for repayment of the amount due under the mortgage for an additional year and one day and changed the payment schedule from semiannually to quarterly. First Federal duly recorded this modification agreement on February 17, 1977.
 

 The plot soon thickened when Barnard became involved in his professional capacity as an attorney in an unrelated real estate transaction between the Browns and Mr. and Mrs. August Scheier (“the Seheiers”). At that time, the Browns sold a piece of property to the Seheiers, and the Seheiers financed this purchase by obtaining a mortgage from First Federal. This piece of property was subject to an outstanding mortgage to Coast Federal Savings & Loan, and certain real property taxes on that property had not yet been satisfied. Barnard was called upon to issue a mortgagee’s title insurance policy to First Federal and to act as a trustee for the transaction. Accordingly, Barnard was issued a check on November 19, 1976, for $36,809.93. This check was made payable to Barnard as attorney for the “trust account,” and indicated on its face that it reflected the “balance of 10118311-August Scheier.” Barnard deposited this check in his bank account, but never used this money to satisfy the preexisting mortgage or taxes on the Brown/Scheier property. Apparently, Barnard converted this money to his own use.
 

 Barnard suffered a serious gunshot wound on March 3,1977, and remained hospitalized until June 10, 1977. During Barnard’s hospitalization, representatives of First Federal informed Barnard that they had learned of his embezzlement of the money entrusted to him in connection with the Brown/Scheier real estate transaction. Coast Federal had previously contacted
 
 *753
 
 First Federal, stating that they intended to foreclose on their mortgage on this property. First Federal suggested to Barnard through his attorney that he execute a note in the sum of $40,500 to be secured by the future advances clause in the mortgage on his San Mateo property. The $40,500 was to be used to pay off Barnard’s obligation,
 
 i.e.,
 
 the Coast Federal mortgage and related taxes and expenses. Barnard apparently agreed, and First Federal submitted a future advance note to Barnard’s attorney. Barnard executed this note on approximately March 21, 1977, and at some unknown time the Browns also signed this document. The face of this $40,500 note states
 

 This is a future advance note secured by Mortgage dated May 3, 1974, recorded in O.R. Book 1034/Page 1574, and Modified Nov. 17, 1976, and recorded in O.R. Bk. 1183, Page 789, Public Records, Lee County, Florida.
 

 Record at 13. After obtaining this note, First Federal applied the Barnard advance to satisfy the Coast Federal mortgage, the outstanding property taxes, and other necessary expenses with the $40,500 amount. Barnard subsequently filed a petition in bankruptcy.
 

 After a hearing to consider the validity and extent of First Federal’s lien on the San Mateo property, the bankruptcy court agreed with appellant Uransky that the future advance note was not secured by the Brown mortgage. The bankruptcy court first held that the future advances clause in the Brown mortgage did not apply to Barnard, since he was not a “mortgagor” as defined in the Brown mortgage. Secondly, the bankruptcy court considered evidence that Barnard and First Federal had not engaged in negotiations concerning future advances at the time the mortgage modification agreement was executed, and it concluded that the parties did not intend the mortgage to cover any future advances, but instead intended to deal on a “single loan” basis. As a final alternative holding, the bankruptcy court held that the future advance note was not secured by the mortgage because it was not the same kind or class of obligation as the principal obligation secured by the mortgage.
 

 On appeal, the district court reversed. First, it held that the definition of the term mortgagor in the Brown mortgage was sufficiently broad to include Barnard. Second, it held that the Brown mortgage and the mortgage modification agreement clearly included a future advances clause binding on Barnard, and therefore parol evidence that First Federal and Barnard had not engaged in negotiations relating to the future advances clause was irrelevant. Finally, the district court rejected the notion that the future advance must be of the same kind or class of obligation as that originally secured by the mortgage in order for the future advances clause to be effective. It therefore concluded that under Fla. Stat.Ann. § 697.04, the future advance was secured by the future advances clause in the mortgage.
 

 Appellant Uransky presents us with three separate issues. They are: (1) whether Barnard is a “mortgagor,” as defined by the Brown mortgage, to whom the future advances clause applies; (2) whether the district court erred in concluding that, read together, the mortgage and mortgage modification agreement clearly and unambiguously provided that future advances under the mortgage to Barnard would be secured by the mortgage, and that parol evidence to contradict these express terms was inadmissible; and (3) whether a note which specifically purports to be a future advance secured by a future advance mortgage must be of the same kind or class of obligation as the original obligation secured by the mortgage in order to be secured by the mortgage. We now turn to a discussion of these issues.
 

 II. WHETHER BARNARD IS A MORTGAGOR UNDER THE BROWN MORTGAGE
 

 The first issue raised in this case concerns whether Barnard is a “mortgagor” under the Brown mortgage. As the first of its alternative holdings, the bankruptcy judge ruled that Barnard was not a mortga
 
 *754
 
 gor and therefore was not subject to the future advances clause. We find this argument to be wholly without merit.
 
 [1]
 
 Under the mortgage modification agreement, Barnard stepped into the shoes of the Browns, the original mortgagors, by assuming the obligations of the Browns under the mortgage and by agreeing to be bound by the terms and conditions of the mortgage.
 
 [2]
 

 III. WHETHER FUTURE ADVANCES CLAUSE IS PART OF THE AGREEMENT BETWEEN BARNARD AND FIRST FEDERAL
 

 The second argument raised by appellant is that the district court erred in excluding parol evidence of the parties intent in entering into the mortgage modification agreement. Specifically, the appellant argues that the bankruptcy court properly considered evidence that Barnard and First Federal engaged in no negotiations concerning future advances and properly concluded that Barnard did not intend to request or obtain future advances pursuant to the Brown mortgage. We agree with the district court that the mortgage and mortgage modification agreement clearly and unambiguously provide that future advances to Barnard by First Federal under the Barnard mortgage would be secured by that mortgage, and that parol evidence to contradict the express terms of those agreements is inadmissible.
 

 It is fundamental that parol evidence is inadmissible to vary or contradict the clear and unambiguous language of a contract.
 
 J. M. Montgomery Roofing Co. v. Fred Howland, Inc.,
 
 98 So.2d 484, 485-86 (Fla.1957). As stated in
 
 J. C. Penney Co. v. Koff,
 
 345 So.2d 732 (Fla.Dist.Ct.App.1975),
 

 [C]ourts are allowed to consider extrinsic evidence only when confronting an ambiguous contract provision, and they are barred from using evidence to create an ambiguity to rewrite a contractual provision, or to vary a party’s obligation under a contract.
 

 Id.
 
 at 735. Under Florida law, the parol evidence rule applies to mortgage contracts.
 
 Jackson v. Parker,
 
 153 Fla. 622, 15 So.2d 451, 459 (1943);
 
 Marion Mortgage Co. v. Howard,
 
 100 Fla. 1418, 131 So. 529, 531 (1930);
 
 330 Michigan Avenue, Inc. v. Cambridge Hotel, Inc.,
 
 183 So.2d 725, 727 (Fla. Dist.Ct.App.1966); 22 Fla.Jur. § 71 (1958).
 

 In this case, appellant argues that parol evidence would demonstrate future advances were not contemplated by Barnard at the time the mortgage modification agreement was entered, and hence the future advances clause in the mortgage has absolutely no binding effect with respect to any transaction between the parties. However, in order for us to accept such an argument, we must reject the clear and unambiguous terms of the contracts themselves. The mortgage explicitly states that the mortgage secures “any and all future advances made by the mortgagee to the mortgagor” within 20 years of the date of the mortgage, so long as the total principal outstanding at any one time does not exceed $350,000. The mortgage modification agreement clearly indicated that the entire mortgage modification agreement would be binding on Barnard, except as modified by the mortgage modification agreement itself. That document stated, “purchaser further assumes and agrees to perform all of the mortgagor’s covenants and obligations and abide by all terms and conditions of the aforesaid note, mortgage and loan agreement.” Record, p. 10. Read together, these two documents leave absolutely no doubt that Barnard agreed to be bound by each and every term of the Brown mortgage as modified. This language leaves no room to question whether a future advances clause is part of the agreement between Barnard and First Federal; the binding
 
 *755
 
 contract between those two parties clearly contains a future advances clause. Because the agreement between the parties is clear on the face of the mortgage and subsequent modification agreement, parol evidence to vary or contradict the clear terms of that agreement is inadmissible.
 
 [3]
 

 We find support for our conclusion that parol evidence is inadmissible to show that the future advances clause in the mortgage was not part of the' agreement between Barnard and First Federal in the case of
 
 Atwell
 
 v.
 
 Western Fire Insurance Co.,
 
 120 Fla. 694, 163 So. 27 (Fla.1935). In that case, there was some dispute regarding the nature and extent of the mortgagor’s obligation, under the mortgage, to obtain insurance on the mortgaged property. The Florida Supreme Court held that parol evidence was not admissible to show that there was no binding insurance clause in the mortgage, since the clause was specifically incorporated into the mortgage. However, the court indicated that parol evidence would be admissible to show the amount of insurance required to be obtained by the mortgage, since the mortgage did not contain an express term indicating the amount to be obtained. Likewise, in this case, parol evidence would not be admissible to indicate that the future advances clause specifically encorporated in the mortgage was not binding upon the parties absent some ambiguity in that clause.
 

 Based on facts similar to the case at bar, the former Fifth Circuit in
 
 Kimball Foods, Inc. v. Republic National Bank,
 
 557 F.2d 491 (5th Cir. 1977),
 
 aff’d sub nom United States v. Kimball Foods, Inc.,
 
 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), concluded that, under analogous Texas law, parol evidence was inadmissible to vary the clear and unambiguous wording of a future advances clause. Absent some ambiguity in the language of the contract, the court held that introduction of “testimony as to [one party’s] subjective intent in receiving the future advances clause was a classic violation of the parol evidence rule and clearly inadmissible.” 557 F.2d at 496. Applying the analogous Florida parol evidence rule to the facts of this case, we also find a clear violation of the parol evidence rule here.
 

 IV. APPLICATION OF FUTURE ADVANCES CLAUSE TO THE SUBSEQUENT NOTE
 

 As a third basis for its judgment, the bankruptcy court held that a future advance must be of the same kind or class of obligation as the principal obligation secured by the mortgage in order for the mortgage to secure the note. A district court concluded that Florida law contained no such requirement, and held that the note was in fact secured by the Brown mortgage. We conclude that under the circumstances of this case, the Brown mortgage secures the future advance note, notwith
 
 *756
 
 standing the fact that the two debts are not of the same kind or class.
 

 We are guided in our analysis of this issue by
 
 Cabot, Cabot & Forbes Land Trust v. First National Bank of Fort Walton Beach,
 
 369 So.2d 89 (Fla.Dist.Ct.App.1979). In
 
 Cabot,
 
 the court was presented with the issue of whether an advance was secured by a previous open-ended mortgage,
 
 i.e.,
 
 a mortgage containing a clause securing future advances and other debts, between the parties. The two subsequent notes contained no reference to the mortgage or any other security. Noting that Fla.Stat.Ann. § 697.04 (West Supp. 1982)
 
 [4]
 
 contains no requirement that subsequent notes make reference to the prior mortgage in order for the mortgage to secure that obligation, the court nonetheless held that the parties had intended that the subsequent notes be secured by the mortgage since the notes and the mortgage related to the same transaction.
 
 Id.
 
 at 90-91.
 

 The
 
 Cabot
 
 case announced a rule that “the intention of the parties is the key factor to be considered in determining whether or not subsequent notes are secured by the open-ended mortgage.”
 
 Id.
 
 at 91. The opinion points to two types of evidence that would be sufficient to demonstrate that the parties in fact intended the later advance to be secured by the mortgage. First, the court suggests that a specific reference in the subsequent advance to the future advance provision in the mortgage would show that the parties intended to secure the note by the prior mortgage. However, since such a reference is not required by the statute, courts may look to a second factor, namely whether the advance and the mortgage are similar kinds of obligations or relate to the same transaction. Under
 
 Cabot,
 
 what is essential is a showing that the future advances clause in the mortgage complies with Fla.Stat.Ann. § 697.04, and that the future advance was made “within the scope of the agreement” so that it may be inferred that the parties intended the future advance to be secured by the mortgage.
 
 Id.
 
 at 90-91.
 
 See Industrial Supply Corp. v. Bricker,
 
 306 So.2d 133, 136-37 (Fla.Dist.Ct.App.1975). Thus, courts may conclude under Florida law that a future advance is secured by an open-ended mortgage either when the subsequent note specifically refers to the mortgage as providing security for that advance or when the two obligations relate to the same transaction or are of the same kind or class.
 

 This characterization of Florida law is consistent with the law of many other jurisdictions. In construing dragnet clauses contained in mortgages, courts have applied a similar two-part test.
 
 [5]
 
 In
 
 Emporia State
 
 
 *757
 

 Bank & Trust Co. v. Mounkes,
 
 214 Kan. 178, 519 P.2d 618 (1974), the Supreme Court of Kansas announced the following test:
 

 In the absence of clear, supportive evidence of a contrary intention, a mortgage containing a dragnet type clause will not be extended to cover future advances unless the advances are of the same kind and quality or relate to the same transaction or series of transactions as the principal obligation secured
 
 or unless the document evidencing the subsequent advance refers to the mortgage as providing security therefor.
 

 Id.
 
 at 183, 519 P.2d at 623 (emphasis added). Other jurisdictions have adopted this rule.
 
 E.g., Canal National Bank v. Becker,
 
 431 A.2d 71, 75 (Me.1981);
 
 First Security Bank of Utah v. Shiew,
 
 609 P.2d 952, 954 (Utah 1980);
 
 Freese Leasing, Inc. v. Union Trust & Savings Bank,
 
 253 N.W.2d 921, 925 (Iowa 1977).
 
 See Akamine & Sons, Ltd. v. American Security Bank,
 
 50 Hawaii 304, 440 P.2d 262 (1968).
 
 See generally
 
 Osborne, Nelson and Whitman, Real Estate Law Financing (1979) at 772-76. This rule provides a simple test to glean the intent of the parties so as to limit the otherwise pervasive scope of a “dragnet clause.”
 

 Applying this test to the case at bar, it is clear that the note between Barnard and First Federal, executed on March 21, 1977, is a future advance under the mortgage and is thus secured by the mortgage. It is undisputed that the future advances clause in the Brown mortgage complies with Fla.Stat.Ann. § 697.04. The face of the note clearly indicates that the parties intended that the note be secured by the Brown mortgage. The note stated on its face
 

 This is a future advance note secured by mortgage dated May 3, 1974, recorded in O.R. Book 1034/Page 1574, and modified Nov. 1976 and recorded in O.R. Bk. 1183, Page 789, Public Records, Lee County, Florida.
 

 Record at 13. Under the rule enunciated above, it is unnecessary that the debt be of the same class or type or relate to the same transaction as the obligation secured by the original mortgage in order for the mortgage to be security for that debt.
 
 [6]
 
 Because the parties clearly demonstrated their intent that the note be secured by the mortgage by so stating on the face of the note, we conclude that the March 21, 1977 note is a future advance secured by the Brown mortgage.
 
 [7]
 

 
 *758
 
 For the reasons stated above, we conclude that the March 21 note is a future advance secured by the Brown mortgage. Accordingly, the judgment of the district court is
 

 AFFIRMED.
 

 [1]
 

 . In fact, appellant appears to have conceded as much in the district court, as reflected by the opinion of the district court below.
 

 [2]
 

 . Moreover, the mortgage defines the term "mortgagor” to include the mortgagor’s “successors . .. and assigns.” Record, p. 151. Barnard clearly became a "successor or assign” of the Browns, and therefore is a mortgagor as defined in the mortgage.
 

 [3]
 

 . Appellant cites several Florida cases including
 
 Boyette
 
 v.
 
 Carden,
 
 347 So.2d 759 (Fla.Dist. Ct.App.1977),
 
 Watson v. Poe,
 
 203 So.2d 14 (Fla.Dist.Ct.App.1967), and
 
 330 Michigan Avenue, Inc. v. Cambridge Hotel, Inc.,
 
 183 So.2d 725 (Fla.Dist.Ct.App.1966), for the proposition that in the construction of a mortgage, courts should glean the intent of the parties both from the face of the instrument itself and from the circumstances surrounding the transaction, and thus parol evidence of what the parties intended at the time the mortgage was executed would be admissible. However, appellant’s argument reflects a misunderstanding of the pa-rol evidence rule. The rule of construction cited in
 
 Boyette
 
 is applicable where there exists some ambiguity, either patent or latent, in the mortgage agreement. However, where the contract contains clear and unambiguous language, no construction of such language is required, and extrinsic evidence is not admissible to vary those clear terms.
 
 See McGhee Interests, Inc. v. Alexander National Bank,
 
 102 Fla. 140, 135 So. 545, 547-48 (1931). This relationship between the parol evidence rule and the policy of liberal construction of mortgages was explained in
 
 330 Michigan Avenue, Inc. v. Cambridge Hotel, Inc., supra,
 
 where the court noted: “[W]hile
 
 the express terms of the mortgage may not be contradicted by parol testimony,
 
 the primary purpose of construction is to ascertain the intent of the parties. This is done not only from the face of the instrument but also from the situation of the parties and the nature and object of their transaction.” 183 So.2d at 727 (footnote omitted) (emphasis added). In this case, the district court properly concluded that the appellant could not seek to contradict the express terms of the mortgage with the parol testimony at issue here.
 

 [4]
 

 . Fla.Stat.Ann. § 697.04(1) (West Supp. 1982) reads as follows:
 

 (1) Hereafter, any mortgage or other instrument given for the purpose of creating a lien on real property may, and when so expressed therein shall, secure not only existing indebtedness, but also such future advances, whether such advances are obligatory or to be made at the option of the lender, or otherwise, as are made within twenty years (20) from the date thereof, to the same extent as if such future advances were made on the date of the execution of such mortgage or other instrument, although there may be no advance made at the time of the execution of such mortgage or other instrument and although there may be no indebtedness outstanding at the time any advance is made. Such lien, as to third persons without actual notice thereof, shall be valid as to all such indebtedness and future advances from the time the mortgage or other instrument is filed for record as provided by law. The total amount of indebtedness that may be so secured may decrease or increase from time to time, but the total unpaid balance so secured at any one time shall not exceed a maximum principal amount which must be specified in such mortgage or other instrument, plus interest thereon, and any disbursements made for the payment of taxes, levies, or insurance on the property covered by the lien, with interest on such disbursements. This section shall not apply to any mortgages, shipping contracts, or other instruments made and given by naval stores operators and producers to secure existing loans and future advances by naval stores factors.
 

 [5]
 

 . Dragnet clauses are those which purport to secure all debts, past, present and future, between the parties to a security agreement. These clauses are generally disfavored and are narrowly construed. See,
 
 e.g., Emporia State Bank & Trust Co. v. Mounkes,
 
 214 Kan. 178, 519 P.2d 618, 621 (1974). Future advances clauses are a subset of the dragnet clause, and often are accorded with similar construction.
 
 *757
 
 See
 
 Health Tecna Corp. v. Zions First National Bank,
 
 609 P.2d 1334, 1337 (Utah 1980).
 

 [6]
 

 . There is no suggestion here that the notation on the March 21 note referring to the mortgage was a subsequent addition after Barnard signed the note, and therefore
 
 First National Bank & Trust Co.
 
 v.
 
 Lygrisse,
 
 7 Kan.App.2d 291, 640 P.2d 1274 (1982),
 
 review granted
 
 April 14, 1982, is inapposite.
 

 [7]
 

 . Appellant argues that the decision in
 
 Community Bank
 
 v.
 
 Jones,
 
 278 Or. 647, 566 P.2d 470 (1977), is on point and requires a contrary result. In that case, a car dealer had entered into a financing arrangement with a bank under which its inventory was pledged as collateral for a loan. The security agreement contained a future advances clause. The dealer then engaged in a pattern of making overdrafts on his account with the bank and the bank had covered those overdrafts for a period of time. Finally, the bank refused to cover the overdrafts, but insisted that the dealer enter into a final flooring transaction under which the entire amount advanced was credited to the dealer’s bank account to cover the overdrafts. Relying on
 
 National Bank of Eastern Arkansas v. Blankenship,
 
 177 F.Supp. 667 (E.D.Ark.1959),
 
 aff’d sub nom National Bank of Eastern Arkansas v. General Mills, Inc.,
 
 283 F.2d 574 (8th Cir. 1960), the court held that because this final transaction was not of the same class as the primary obligation, the note was not secured under the original security agreement under the Uniform Commercial Code.
 

 The
 
 Community Bank
 
 case is distinguishable from the case at bar. There, the Supreme Court of Oregon made no mention in its opinion of any clear statement in the note evidencing the final transaction to indicate that the parties intended it to be secured by the prior security agreement, as was present in the case at bar. Under
 
 Cabot
 
 and the
 
 Emporia State Bank
 
 line of cases cited above, the clear notation on the March 21 note in this case sufficiently demonstrates the parties intent that the Brown mortgage would secure the note. As the court in
 
 Blankenship
 
 noted, “the parties to a mortgage or deed of trust may by contract extend the lien thereof to obligations other than those specifically described in the instrument, provided they express their intent to do so with sufficient definiteness.” 177 F.Supp. at 672. Here, the subsequent note clearly indicates the
 
 *758
 
 agreement of the parties to extend the lien of the mortgage to the March 21 transaction pursuant to the future advances clause in the mortgage.