**Harold H. WILE, Plaintiff,**

v.

**PAUL REVERE LIFE INSURANCE COMPANY; Unumprovident Corporation; and the Kenzer Corporation Group Long Term Disability Plan, Defendants.**

**No. 1:04 CV 2159 CC.**

United States District Court, N.D. Georgia, Atlanta Division.

Aug. 4, 2005.

---

Kurt Russell Ward, Pamela Ilene Atkins, Galler & Atkins, Atlanta, GA, for Plaintiff.

Michael Joseph Hannan, III, Thompson, Slagle & Hannan, LLC, Duluth, GA, for Defendants.

### ORDER

COOPER, District Judge.

Plaintiff Harold H. Wile ("Plaintiff") brings the instant action against Defendants Paul Revere Life Insurance Company, UnumProvident Corporation, and the Kenzer Corporation Group Long Term Disability Plan (collectively referred to as "Defendants") pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"). Plaintiff seeks to recover long term disability benefits under 29 U.S.C. § 1132, the civil enforcement provision of ERISA. Defendants have filed a Counterclaim, seeking attorneys' fees and expenses of litigation under 29 U.S.C. § 1132(g).

Presently pending before the Court are Defendants' Motion for Summary Judgment [Doc. No. 13],[1] Defendants' Motion to Stay Discovery [Doc. No. 16], Plaintiff's Motion to Conduct Discovery [Doc. No. 21], Plaintiff's Motion to Stay Further Briefing and to Stay the Court's Consideration of Defendants' Motion for Summary Judgment [Doc. No. 21], Plaintiff's Motion for Summary Judgment [Doc. No. 22], and Plaintiff's Motion to Strike Defendants' Response to Plaintiff's Notice to Court of Recent Eleventh Circuit Authority [Doc. No. 29].

### I. FACTS AND POSITIONS OF THE PARTIES

On August 25, 1991, Paul Revere Life Insurance Company ("Paul Revere") delivered a group long term disability insurance policy (the "Policy") to Kenzer Corporation ("Kenzer"). (Defendants' Rule 56.1 Statement of Undisputed Facts (referred to herein as "DSUF") ¶ 1.) In the Policy's "Schedule of Benefits" section, the Policy provides, in pertinent part, the following:

**Amount of Disability Income Benefit:**
60% of Basic Monthly Earnings:
 Maximum Benefit— $3500 per month
 Minimum Benefit— 15% of basic monthly earnings, up to a maximum of $100.

(DSUF ¶ 3, Ex. A at 3.) Under a subsection of the "Long Term Disability Income Benefit" section entitled "What We Pay," the Policy states, in pertinent part, "We pay monthly total disability benefits to an employee if he become totally disabled while insured due to injury or sickness. The employee must be under the care of a doctor while totally disabled. The maximum amount we pay is shown in the Schedule of Benefits." (DSUF ¶ 3, Ex. A at 16.) That section further states, "Benefit payments may be reduced if the employee receives income from other sources. When and how this occurs is described in the section entitled Benefit Reductions." (*Id.*) (emphasis added). Under the section of the policy entitled "Benefit Reductions," the policy states, in pertinent part, the following:

> While an employee is disabled, he may be eligible for benefits from other income sources. If so, we reduce our benefit by the amount of such other benefit paid or payable.
>
> Listed below are other income sources which will reduce our benefit.
>
> 1. Social Security benefits, including Primary Social Security benefits and/or Family Social Security benefits received by an employee or an employee's dependents on account of the employee's disability or early or normal retirement. (If an employee fails to apply for Social Security benefits, we determine the

---

1. Defendants move for summary judgment only on Plaintiffs' claims. Defendants have not moved for summary judgment on their Counterclaim.

amount he was eligible to receive, and, for the purposes of this insurance, he will be considered to receive that amount.)

(DSUF ¶ 6, Ex. A at 23) (emphasis added). Finally, in the section of the Policy entitled "Premiums," the Policy provides that "[t]he initial premium rates are: .677% of the first $5833 of Basic Monthly Earnings." (DSUF, Ex. A at 33.)

Plaintiff Harold H. Wile is a former employee of Kenzer, who participated in the Kenzer Corporation Group Long Term Disability Plan (the "Plan") during his employment with Kenzer. He became eligible for long term disability benefits from Paul Revere from the 90th day following his onset of disability until the expiration of the period during which benefits were payable, which was to the age of 65. (DSUF ¶ 7.) The maximum benefit period expired on January 12, 2003. (*Id.*)

Plaintiff's "Basic Monthly Earnings" prior to the onset of his disabling condition were determined to be $8,671.77. (DSUF ¶ 8.) Applying the 60% formula set forth in the "Schedule of Benefits" to his monthly earnings, the result is $5,203.06. (DSUF ¶ 9.) Plaintiff also receives a Social Security disability income benefit in the amount of $1,285.00. (DSUF ¶ 11.)

Based on the Policy provisions mentioned above, Defendants take the position that although 60% of Plaintiff's monthly earnings was $5,203.06, the maximum benefit to which he is entitled is $3,500.00. Further, inasmuch as Plaintiff receives $1,285.00 in Social Security disability benefits, Defendants contend that the amount of $1,285.00 should be deducted from the maximum benefit amount, which results in Plaintiff receiving benefits from the Plan in the amount of $2,215.00.

Plaintiff takes the contrary position that rather than deducting his Social Security disability benefits from the maximum benefit amount, his Social Security disability

benefits should be deducted from 60% of his monthly earnings, which would amount to $3,918.06 (i.e., $5,203.06—$1,285.00). Plaintiff then asserts that he would be entitled to benefits from the Plan in the amount of $3,500.00, the maximum benefit permitted. At a minimum, Plaintiff contends that the definition of the terms "benefit" and "our benefit" are ambiguous and that the Court should either construe the ambiguity in his favor, since he did not draft the contract provisions, or permit discovery and consider extrinsic evidence to resolve the ambiguity.

## II. DISCOVERY MOTIONS

Defendants move the Court to stay discovery pending resolution of their summary judgment motion, while Plaintiff moves the Court to conduct discovery prior to the Court considering Defendants' summary judgment motion and the cross summary judgment motion that Plaintiff subsequently filed. Whether Plaintiff should be permitted to take discovery prior to the Court resolving the summary judgment motions depends entirely on whether the Court finds an ambiguity in the Policy with respect to the definition of "benefit" and "our benefit," as those terms are used in the "Long Term Disability Income Benefit" and "Benefits Reduction" sections of the Policy.

Where an ambiguity exists in an ERISA plan, the issue is one of contract interpretation and extrinsic evidence may be considered to resolve the ambiguity. *See, e.g., Adams v. Thiokol Corp.*, 231 F.3d 837, 844 (11th Cir.2000); *Stewart v. KHD Deutz of America Corp.*, 980 F.2d 698, 702 (11th Cir.1993); *First Capital Life Ins. Company–In Conservation v. AAA Communications*, 906 F.Supp. 1546, 1556 (N.D.Ga.1995). Absent an ambiguity, however, the consideration of extrinsic evidence is not proper. *See Stewart*, 980

F.2d at 702 ("extrinsic evidence is not admissible to contradict the terms of an unambiguous contract"); *Uransky v. First Federal Sav. & Loan Ass'n*, 684 F.2d 750, 754 (11th Cir.1982) ("It is fundamental that parol evidence is inadmissible to vary or contradict the clear and unambiguous language of a contract."). "A contract is ambiguous when it is reasonably susceptible to more than one interpretation." *Stewart*, 980 F.2d at 702 (citations omitted).

■ Having reviewed the Policy in its entirety, the Court finds that the Policy is not ambiguous with respect to the definition of "benefit" and "our benefit." As will be explained more fully below in the Court's discussion of the parties' summary judgment motions, the definition of these terms is easily ascertained by looking at the description of **"Amount of Disability Income Benefit"** in the Schedule of Benefits section of the Policy. As set forth in that section, **"Amount of Disability Income Benefit"** means the following:

60% of Basic Monthly Earnings:
Maximum Benefit— $3500 per month
Minimum Benefit— 15% of basic monthly earnings, up to a maximum of $100

Based on the foregoing, the only reasonable interpretation of "benefit" and "our benefit" is 60% of basic monthly earnings, unless those earnings exceed $3,500.00. Where 60% of an insured's basic monthly earnings exceed $3,500.00, then "benefit" and "our benefit" must be interpreted to mean $3,500.00, the maximum benefit allowed under the Policy. Therefore, in the "Long Term Disability Income Benefit" section of the Policy where the Policy states that "[b]enefit payments" may be reduced if the employee receives income from other sources, "benefit payments" must be interpreted to mean payments no more than $3,500.00. Likewise, where the Policy states in the "Benefits Reduction" section that "we reduce our benefit by the amount of such other benefits paid or payable," the terms "our benefit" must be

interpreted to mean $3,500.00 in a case such as this, where 60% of the insured's basic monthly earnings exceeds $3,500.00.

Defendants interpret "our benefit" to mean "*either* 60% of a claimant's basic monthly earnings, *or* $3,500.00, *whichever* is less." (Defs.' Resp. to (1) Pl.'s Mot. to Conduct Discovery and (2) Pl.'s Mot. to Stay Further Briefing and to Stay the Court's Consideration of Defs.' Mot. for Summ. J. at 3–4.) While the definition is worded differently, Defendants' definition is synonymous with the Court's definition. Plaintiff argues that even under Defendants' definition, his interpretation of what he is owed is correct: "Our benefit is *either* 60% of a claimant's basic monthly earnings (i.e., $5,203.06—$1,285.00 = $3,918.06 (*offset LTD benefit per month* )), *or* $3500, *whichever is less*." (Pl.'s Reply in Supp. of (1) Pl.'s Mot. to Conduct Discovery and (2) Pl.'s Mot. to Stay Further Briefing and to Stay the Court's Consideration of Defs.' Mot. for Summ. J. at 5.) However, by incorrectly incorporating the offset into the definition and 60% formula, Plaintiff is effectively changing the definition. Therefore, Plaintiff's argument fails.

Inasmuch as the Court finds that the provisions discussed above are clear and unambiguous, extrinsic evidence must not be considered and discovery therefore is not necessary. Defendants' Motion to Stay Discovery is **DENIED as moot** and Plaintiff's Motion to Conduct Discovery is **DENIED**.

### III. PLAINTIFF'S MOTION TO STAY

The Court next considers Plaintiff's Motion to Stay Responsive Briefing and to Stay the Court's Consideration of Defendants' Motion for Summary Judgment. Inasmuch as the parties have completed briefing on the pending summary judgment motions, Plaintiff's request that briefing be stayed on Defendants' Motion

for Summary Judgment is now moot. Further, given that the Court has determined that no discovery is necessary in this action, there is no reason to delay consideration of Defendants' Motion for Summary Judgment. Therefore, the portion of Plaintiff's motion seeking a stay of responsive briefing is **DENIED as moot**, and the portion of the motion seeking a stay of the Court's consideration of Defendants' Motion for Summary Judgment is **DENIED**.

## IV. PLAINTIFF'S MOTION TO STRIKE

Plaintiff next moves the Court to strike Defendant's Response to Plaintiff's Notice to Court of Recent Eleventh Circuit Authority. On June 22, 2005, several months after the parties had completed briefing on the cross motions for summary judgment, Plaintiff submitted a notice to the Court regarding a recent decision of the Eleventh Circuit Court of Appeals. On July 15, 2005, Defendants responded to Plaintiff's notice and the Eleventh Circuit decision mentioned therein. Contending that Defendants' response is untimely, Plaintiff presently moves the Court to strike the response.

Local Rule 7.1B provides that "[a]ny party opposing a motion shall serve the party's response, responsive memorandum, affidavits, and any other responsive material not later than ten (10) days after service of the motion." Pursuant to Fed. R.Civ.P. 6(a) and Local Rule 6.1A, when the time period for an action to be taken is less than eleven days, weekends and holidays are not to be counted in the calculation. Further, pursuant to Fed.R.Civ.P. 6(e) and Standing Order 04–01(II)(B.)(4.),

three days are added for service by mail.[2] Assuming that the foregoing rules apply in the instant situation, although the Court recognizes that, as a technical matter, no "motion" was filed, Defendants' response to Plaintiff's notice should have been filed by at least July 11, 2005. The response, however, was not filed until four days later on July 15, 2005, and was therefore untimely.

 Notwithstanding the foregoing, Defendants' response is not due to be stricken. Local Rule 7.1F, the rule upon which Plaintiff relies in requesting that the Court strike the response, simply states, "The court, in its discretion, may decline to consider any motion or brief that fails to conform to the requirements of these rules." LR 7.1F, NDGa. Rule 7.1F provides no authority for this Court to strike the response. Therefore, while the Court will not consider the response in ruling upon the pending summary judgment motions, the response will not be stricken from the record.[3] Plaintiff's Motion to Strike Defendant's Response to Plaintiff's Notice to Court of Recent Eleventh Circuit Authority is **DENIED**.

## V. CROSS SUMMARY JUDGMENT MOTIONS

### A. Summary Judgment Standard

"A party against whom a claim, counter-claim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move . . . for a summary judgment in the party's favor as to all or any part thereof." Fed.R.Civ.P. 56(b). Rule 56 further provides that summary judgment is proper "if the pleadings, depositions,

2. Three days are also added when service is by electronic filing.

3. Plaintiff seeks leave from the Court to file a reply in response to Defendants' arguments, regardless of whether Defendants' response is

stricken as untimely. Inasmuch as the Court is not taking Defendants' response into consideration, the Court finds no reason to take Plaintiff's reply into consideration and will not do so.

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact. *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir.1991) (en banc). When the nonmoving party has the burden of proof at trial, the moving party may discharge its initial burden by " 'showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. If the moving party fails to discharge its initial burden, then the court must deny the motion. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir.1993). If, however, the moving party meets the burden, the nonmoving party must then "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (citing Fed.R.Civ.P. 56(e)). If, in response, the nonmoving party fails to support an essential element of its case as to which it bears the burden of proof, summary judgment is appropriate. *Rice–Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 840 (11th Cir.2000) (citing *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548).

### B. *Standard of Review Applicable to ERISA Decisions*

ERISA provides that a plan participant or beneficiary may bring a civil action in federal court to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." ERISA, § 1132(a)(1)(B); *Blake v. Unionmutual Stock Life Ins. Co.*, 906 F.2d 1525, 1526 (11th Cir.1990) (per curiam). In reviewing a decision by the administrator of an ERISA plan, a court must first decide the appropriate standard of review. ERISA does not set forth a standard of review for challenges to such decisions. However, the standard has evolved as a matter of federal common law. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In *Firestone*, the United States Supreme Court held that a *de novo* standard applies "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115, 109 S.Ct. 948; *see also HCA Health Servs. of Georgia, Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 992–95 (11th Cir.2001). Here, Defendants concede that the policy at issue does not contain the necessary discretionary language to trigger a more deferential standard of review and that Paul Revere's decision therefore should be reviewed under a *de novo* standard.

### C. *Analysis*

As set out in Section I of this Order, Plaintiff contends that Defendants have improperly reduced the amount of disability benefits due to him. Plaintiff argues that the proper interpretation of the applicable contract provisions mandates that he receive $3,500.00 per month, the maxi-

mum benefit payable under the Policy, rather than $2,215.00 per month, the amount that Defendants contend he is due.[4] Alternatively, Plaintiff argues that the Policy language is ambiguous and must be considered in light of extrinsic evidence or construed in his favor. Plaintiff has asserted causes of action against the Defendants for wrongful denial of long term disability payments under 29 U.S.C. § 1132(a)(1)(B), breach of fiduciary duty under 29 U.S.C. § 1132(a)(3), and attorneys' fees and costs under 29 U.S.C. § 1132(g)(1).

 Insurance policies governed by ERISA are contracts, and the interpretation of such contracts is governed by federal law. *Dixon v. Life Ins. Co. of N. Am.,* 389 F.3d 1179, 1183 (11th Cir.2004); *accord Babikian v. Paul Revere Life Ins. Co.,* 63 F.3d 837, 840 (9th Cir.1995). Interpretation of a contract is generally a question of law for the Court, as is the initial question of whether a contract is ambiguous. *Da Cunha v. Standard Fire Ins. Co./Aetna Flood Ins. Program,* 129 F.3d 581, 584 (11th Cir.1997). In *Da Cunha,* the Eleventh Circuit set forth the process for contract interpretation as follows:

> Under ordinary rules of contract construction, a court must first examine the natural and plain meaning of a policy's language, and an ambiguity does not exist simply because a contract requires interpretation or fails to define a term. While ambiguous contracts are construed against their authors, meaning should not be added to clear and unambiguous language.

*Id.* at 585 (internal punctuation and footnote omitted). "A contract is not rendered ambiguous by the mere fact that the parties may not agree upon the proper construction to be given it." *Vreeland v. Federal Power Comm'n,* 528 F.2d 1343, 1351 (5th Cir.1976) (citations omitted).

 The well-known doctrine of *contra proferentem* requires that ambiguities in a contract be resolved against the drafter. *HCA Health Servs.,* 240 F.3d at 994. However, this doctrine applies only when an ambiguity is present. *Id.* ("When a plan is ambiguous, the principle of *contra proferentem* requires that ambiguities be construed against the drafter of a document"); *accord Marquette Gen. Hosp. v. Goodman Forest Indus.,* 315 F.3d 629, 633 n. 1 (6th Cir.2003) ("The *contra proferentum* [sic] rule is applied where contractual language is found to have more than one interpretation."); *Hugo Boss Fashions, Inc. v. Federal Ins. Co.,* 252 F.3d 608, 616 (2d Cir.2001) ("But, of course, the *contra proferentem* does not come into play unless this court first determines that the contract is, in fact, ambiguous.").

In this case, Plaintiff and Defendants dispute the definition of the terms "benefit" and "our benefit," as those terms are used respectively in the sections of the Policy entitled "Long Term Disability Benefit" and "Benefits Reduction." While Plaintiff contends that the terms are not expressly defined in the Policy, Defendant contends that the terms are clearly defined. To the extent that there are no explicit definitions for "benefit" and "our benefit" set forth in the Policy's "General Provisions Definitions" section, the Court agrees with Plaintiff that the terms "bene-

---

**4.** As a general matter, Plaintiff does not dispute that offsets may be had from maximum or capped benefits provisions. Indeed, Defendants have cited authority for the proposition that such offsets are proper. *See Glover v. South Cent. Bell Tel. Co.,* 644 F.2d 1155, 1159–60 (5th Cir. (Unit A) 1981). Rather, Plaintiff's argument is that the language in the policy at issue in this case does not specify that the offset should be from the maximum benefit amount.

fit" and "our benefit" are not expressly defined. However, the absence of an explicit definition for these terms in the "General Provisions Definitions" section does not render the terms or the contract ambiguous. *Da Cunha*, 129 F.3d at 585 (stating that a contract is not rendered ambiguous simply because the contract does not define a term). Indeed, after reading the relevant provisions in the Policy, the meaning of "benefit" and "our benefit" is clear.

In the "Schedule of Benefits" section, the Policy unambiguously provides that "Amount of Disability Income Benefit" is equal to 60% of an insured's basic monthly earnings and that the maximum benefit is $3,500.00 per month. The only reasonable interpretation of this language is that the "Amount of Disability Income Benefit" is 60% of an insured's basic monthly earnings, unless 60% of the insured's basic monthly earnings exceeds $3,500.00. If the figure does exceed $3,500.00, then $3,500.00 is the monthly maximum benefit.

Plaintiff argues that Defendants have incorrectly applied the Policy's Social Security offset provision to the capped benefit amount rather than to the Policy's actual benefit amount. In this regard, Plaintiff urges that "Amount of Disability Income Benefit" or "our benefit" should be interpreted only to mean 60% of an insured's basic monthly earnings, but that interpretation wholly ignores the express language immediately following that the "Maximum Benefit" is $3,500.00 per month. Contrary to Plaintiff's position that this section of the Policy is ambiguous because it offers a dual definition of "Amount of Disability Income Benefit," the Court finds that this section is unambiguous and that it simply offers a single definition that contains multiple parts, which must both be considered to arrive at the accurate definition. Considering both parts of the definition, the actual benefit amount is the capped benefit amount in cases, like this one, where 60% of the insured's monthly earnings exceed $3,500.00. In other words, "our benefit" can never be interpreted to mean something more than $3,500.00 because $3,500.00 is the most the Plan will ever pay. An interpretation to the contrary is not reasonable and is incorrect.

The Court's finding that Defendants' interpretation of the terms "benefit" and "our benefit" is the only reasonable and correct one is reinforced by a review of the Policy's "Long Term Disability Income Benefit" section. In that section, under the subheading "What We Pay," the Policy states that "[b]enefit payments may be reduced if the employee receives income from other sources. When and how this occurs is described in the section entitled Benefit Reductions," (DSUF, Ex. A at 16.) The Policy unambiguously provides and Plaintiff cannot legitimately refute that no "benefit payment" under the Policy can exceed $3,500.00. Given this indisputable fact, the statement that "**[benefit] payments** may be reduced" indicates that the reduction is from, at most, the maximum benefit of $3,500.00. (*Id.*) (emphasis added). There simply is no such thing as a "benefit payment" under the Policy that exceeds $3,500.00.

Still, in further support of his erroneous interpretation of the terms "benefit" and "our benefit," Plaintiff brings the Court's attention to the section of the Policy entitled "Premium Credits." Plaintiff contends that this section reflects Paul Revere's intent to pay the maximum benefit of $3,500.00 to insureds earning over $5,833.00 per month in Basic Monthly Earnings. In this section, the Policy states, in pertinent part, that the initial premium rates are .677% of the first $5,833.00 of Basic Monthly Earnings. Plaintiff shows the Court that $3,500.00 multiplied by 60% equals $5,833.00, and

Plaintiff emphasizes that Defendants insured against the amount of $3,500.00 knowing the Policy's Benefit Reduction provisions and knowing that, even after applying the Benefit Reduction provisions, the benefit amount could be $3,500.00 per insured. While Plaintiff's argument in this regard is creative, the Court is not going to strain to find an ambiguity in the Policy where none exists. This section of the Policy simply does not sway the Court from its conclusion that the Policy clearly sets forth the meanings of "benefit" and "our benefit" and that Defendants' interpretation of the terms is undoubtedly the correct one.

Finally, Plaintiff argues that the Eleventh Circuit's recent unpublished decision in *Jeffrey D. Kamlet v. Hartford Life and Accident Life Insurance Co.*, No. 04–11532, D.C. 144 Fed.Appx. 755 (11th Cir. June 10, 2005), compels denial of Defendants' Motion for Summary Judgment and granting of Plaintiff's Motion for Summary Judgment. In *Kamlet*, the insurer appealed from a decision of the United States District Court for the Southern District of Florida interpreting the Summary Plan Description in that case to provide for an offset from the insured's monthly pre-disability earnings rather than from the capped benefit amount. The Summary Plan Description provided that the beneficiary "will be paid an Income Benefit as shown in the insurance schedule." The Insurance Schedule provided the following:

| INCOME BENEFIT | 60% of Monthly Earnings, rounded to the next higher $1.00 |
| Minimum Income Benefit: | $100 per month |
| Maximum Income Benefit: | $6,000 per month |

Under the section of the Summary Plan Description entitled "Partial Disability Benefit," the Summary Plan Description stated, "The Partial Disability Benefit is equal to the Income Benefit reduced by: (a) 50% of the pay from gainful employment." The district court and the Eleventh Circuit both agreed with the insured that the language in the Summary Plan Description should be interpreted to mean that 50% of his wages for part-time work should be subtracted from 60% of his monthly pre-disability earnings rather than the capped benefit amount of $6,000.00, as the insurer argued.

Plaintiff reliance on the *Kamlet* decision is misplaced. As an initial matter, *Kamlet*, an unpublished decision of the Eleventh Circuit, is not binding precedent. *See* 11th Cir. R. 36–2. Further, while *Kamlet* appears to be analogous to the instant case, the case is actually distinguishable. In the Summary Plan Description in *Kamlet*, "INCOME BENEFIT," "Minimum Income Benefit," and "Maximum Income Benefit" are separately defined terms. In the instant case, on the other hand, the "Maximum Benefit" is actually a part of the definition of the "Amount of Disability Income Benefit." That is, in the "Schedule of Benefits" section, the following appears:

**Amount of Disability Income Benefit:**
60% of Basic Monthly Earnings:
Maximum Benefit— $3500 per month
Minimum Benefit— 15% of basic monthly earnings, up to a maximum of $100.

Although the distinction may be subtle, the distinction is noteworthy because the primary problem with Plaintiff's argument and interpretation in this case is that Plaintiff fails to acknowledge that the "Maximum Benefit" is a part of the definition of "Amount of Disability Income Benefit." Further, in *Kamlet* the Eleventh Circuit noted that the Summary Plan Description provided the following: "You will be paid an Income Benefit *as shown in the insurance schedule.*" Looking solely at the formula for calculating Income Benefit, the Eleventh Circuit reasonably found that the Income Benefit would have been 60% of the insured's pre-disability monthly earnings. Here, on the other hand, the

"Amount of Disability Income Benefit," which is referenced in other Sections of the Policy as "benefit" and "our benefit," is clearly 60% of Basic Monthly Earnings, provided that amount does not exceed $3500.00, the maximum "Amount of Disability Income Benefit" an insured may receive. Moreover, as the Court has discussed above, there is additional language in the "Long Term Disability Income Benefit" section of the Policy in this case that supports Defendants' interpretation, whereas there is no indication in the *Kamlet* decision that similar language was present in the Summary Plan Description to support the appellant's argument. Finally, assuming, *arguendo*, that *Kamlet* could be understood to be analogous to this case, the Court respectfully disagrees with the decision in *Kamlet.*

In sum, the Court does not dispute that the contract language at issue in this case could have been drafted in a better manner. Still, in its present form, the language is not ambiguous. While 60% of Plaintiff's monthly earnings equals $5,203.06, the maximum benefit payable under the Policy is $3,500.00. Insofar as Plaintiff receives a Social Security disability income benefit in the amount of $1,285.00, that amount is due to be deducted from the maximum benefit payable, $3,500.00. After the deduction, the net benefit due Plaintiff is $2,215.00.

Therefore, for the reasons that the Court discussed in denying Plaintiff's Motion for Discovery and for the reasons articulated by the Court in this discussion of the parties' cross motions for summary judgment, the Court finds that the benefit calculation in dispute was correct Consequently Count One of Plaintiff's Complaint under 29 U.S.C. § 1132(a)(1)(B) is due to be dismissed because Plaintiff is not entitled to any additional benefits. Further, Count Two of Plaintiff's Complaint under

29 U.S.C. § 1132(a)(3) is also due to be dismissed because the Court finds that there has been no breach of fiduciary duty in this case. Adhering to the terms of the Policy does not constitute a breach of fiduciary duty. *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.,* 302 F.3d 18, 29 (2d Cir.2002); *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.,* 805 F.2d 732, 737 (7th Cir.1986). Finally, inasmuch as Counts One and Two fail, Plaintiff's third derivative cause of action for attorneys' fees and costs under 29 U.S.C. § 1132(g)(1) also fails as a matter of law.

## VI. CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Defendants' Motion for Summary Judgment [Doc. No. 13], **DENIES as moot** Defendants' Motion to Stay Discovery [Doc. No. 16], **DENIES** Plaintiff's Motion to Conduct Discovery [Doc. No. 21], **DENIES as moot** Plaintiff's Motion to Stay Further Briefing [Doc. No. 21], **DENIES** Plaintiff's Motion to Stay the Court's Consideration of Defendants' Motion for Summary Judgment [Doc. No. 21], **DENIES** Plaintiff's Motion for Summary Judgment [Doc. No. 22], and **DENIES** Plaintiff's Motion to Strike Defendants' Response to Plaintiff's Notice to Court of Recent Eleventh Circuit Authority [Doc. No. 29].