United States Court of Appeals,

Eleventh Circuit.

Nos. 96-4308, 96-4309.

Jose Maria Carneiro DA CUNHA and Ivy Carneiro Da Cunha, Plaintiffs-Appellants,

v.

The STANDARD FIRE INSURANCE COMPANY/AETNA FLOOD INSURANCE PROGRAM, Defendant-Appellee.

Marsha G. MADORSKY and Jeffrey Rothstein, Plaintiffs-Appellants,

v.

The STANDARD FIRE INSURANCE COMPANY/AETNA FLOOD INSURANCE PROGRAM, Defendant-Appellee.

Jay Allen SIEGEL, Plaintiff,

Lois H. Siegel, Plaintiff-Appellant,

v.

The STANDARD FIRE INSURANCE COMPANY/AETNA FLOOD INSURANCE PROGRAM, Defendant-Appellee.

Irving GETZ and Joan Getz, Plaintiffs-Appellants,

v.

The STANDARD FIRE INSURANCE COMPANY/AETNA FLOOD INSURANCE PROGRAM, Defendant-Appellee.

Irwin ADLER and Helene Adler, Plaintiffs-Appellants,

v.

STATE FARM FIRE AND CASUALTY COMPANY, Defendant-Appellee.

Dec. 1, 1997.

Appeals from the United States District Court for the Southern District of Florida. (Nos. 93-1570-CIV-UUB), 93-2133-CIV-UUB, 93-2213-CIV-UUB, 93-2212-CIV-UUB), Ursula Ungaro-Benages,

Judge.

Before CARNES, Circuit Judge, and KRAVITCH and REAVLEY[*], Senior Circuit Judges.

REAVLEY, Circuit Judge:

We address in this opinion two separate appeals which raise similar issues. In case No. 96-4308, Jose and Ivy Carneiro Da Cunha, Marsha Madorsky and Jeffrey Rothstein, Irving and Joan Getz, and Lois Siegel, plaintiffs below, appeal a summary judgment in favor of Standard Fire Insurance Company/Aetna Flood Insurance Program (Aetna). In case No. 96-4309, Irwin and Helene Adler, plaintiffs below, appeal a summary judgment in favor of State Farm Fire and Casualty Company (State Farm). Both cases were filed in the same district court and consolidated for some purposes below. Appellants' homes were damaged by Hurricane Andrew in 1992, and the district court ruled that the ground floors of these homes had only limited coverage under flood insurance policies issued by Aetna and State Farm. We affirm.

## BACKGROUND

The appellants are owners of three-story townhouses in a real estate development known as L'Hermitage. The homes are located in Dade County, Florida, abutting Biscayne Bay. Appellants all had flood insurance offered through the National Flood Insurance Program, a federal program created by the National Flood Insurance Act of 1968(Act) and administered by the Federal Emergency Management Agency (FEMA).[1]

Appellant Irwin Adler, an owner of one of the townhouses, was also involved in the design, construction and marketing of the townhouses. He met with representatives of FEMA and the City

---

[*]Honorable Thomas M. Reavley, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

[1]*See* 42 U.S.C. §§ 4001-4127 (1994).

of Miami to secure flood insurance for the townhouses. FEMA and the City imposed certain requirements on the buildings, including a requirement from the City that some units have break-away walls on the ground floor. Adler testified that "[w]e had to inform the owners that [the ground floors] were not to be habitable," but later explained his understanding was "not that you couldn't use it, couldn't keep furniture down there or anything, but they wanted people to be told that it wasn't habitable in the tune of being a sleeping facility.... It was not used, per se, as a bedroom."

Flood insurance for L'Hermitage units under the National Flood Insurance Program was obtained through insurance agents John Wilkerson and Robert Seitlin. Wilkerson was acting as an agent for the National Flood Insurance Program (though he later became a State Farm agent) and Seitlin was with the firm of Seitlin & Company. Wilkerson testified that he informed FEMA that "there was habitation" on the ground level floors and that the ground level floors did not have true break-away walls. FEMA told him to write the policies "as a three-story building." Wilkerson testified that he thought the ground floor was covered but did not discuss with Adler whether the ground floors were or were not covered by the policies. Seitlin testified to his understanding that the ground floors were "not to be used for any living purposes, and that [the developer] was to tell the people who he was going to sell it to that that was the situation." His understanding was that the ground floor was "going to be a garage, a laundry room and storage; nothing else."

Appellants' homes were damaged by Hurricane Andrew, which struck on August 24, 1992. While flood insurance for L'Hermitage was originally purchased directly from the federal government under the National Flood Insurance Program, at the time the hurricane struck all appellants had policies offered by private insurers Aetna and State Farm. FEMA has developed a Standard Flood Insurance Policy, or SFIP.[2] By statute and regulation private insurers may offer the

---

[2]The current SFIP is set out at 44 C.F.R. pt. 61, App. A (1996).

SFIP under the "Write-Your-Own" (WYO) program.[3]  By regulation, a WYO company "shall arrange for the adjustment, settlement, payment and defense of all claims arising from policies of flood insurance it issues under the Program, based upon the terms and conditions of the Standard Flood Insurance Policy."[4]

Plans for the homes indicate that the ground floor consisted of a garage, storage room, bathroom, laundry area, and a "multi-purpose room."  The evidence shows that appellants were using the ground floors as ordinary living areas, with furniture, carpeting, etc.

Aetna and State Farm denied some or all of the Andrew-related claims submitted by each appellant, precipitating this litigation.  The district court ruled by summary judgment that the insurers were not liable for flood damage to appellants' ground floors, except for ground floor damages to those items listed in Article V(F) of the policy as covered.  Under this provision coverage is generally denied, and is limited to certain excepted items, such as sump pumps, oil tanks and cisterns.

DISCUSSION

Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[5]

Policies issued under the National Flood Insurance Program are contracts.[6]  "As contracts, the standard policies issued under the Program are governed by federal law, applying "standard

---

[3]*See* 42 U.S.C. § 4051 (1994);  44 C.F.R. § 61.13(f)(1996).  The current provisions of the Code of Federal Regulations cited in this opinion, unless it indicates otherwise, were in effect in essentially the same form at the time the relevant policies were issued.

[4]44 C.F.R. § 62.23(d)(1996).

[5]FED.R.CIV.P. 56(c).

[6]*Wright v. Director, Federal Emergency Management Agency,* 913 F.2d 1566, 1570 (11th Cir.1990).

insurance law principles.' "[7]  "Contract interpretation is generally a question of law."[8]  The initial question of whether a contract is ambiguous is also question of law for the court, subject to de novo review.[9]

Under ordinary rules of contract construction, "a court must first examine the natural and plain meaning of a policy's language," and an "ambiguity does not exist simply because a contract requires interpretation or fails to define a term."[10]  "While ambiguous contracts are construed against their authors, meaning should not be added to clear and unambiguous language."[11]

Applying these basic principles of insurance contract interpretation, the district court correctly ruled, as a matter of law, that coverage for damages to the ground floors of the townhouses was limited to the items listed in Article V(F) of the policy.  Article V(F) provides that the insurer does not cover the following:

> Enclosures, contents, machinery, building components, equipment and fixtures located at an elevation lower than the lowest elevated floor of an elevated post-FIRM building....

Construing this provision requires reference to other provisions in the SFIP and applicable federal regulations.  There can be no dispute that the policies at issue are subject to limitations on coverage imposed by federal statute and regulation.  The policies themselves state, on their first page, that they are issued pursuant to and subject to all terms of the National Flood Insurance Act of 1968 and applicable federal regulations in Title 44 of the Code of Federal Regulations.  Accordingly, appellants "are bound not only by the terms of the policy, but by the terms of the

---

[7]*Id.* at 1570-71 (citations omitted).

[8]*Lawyers Title Ins. Corp. v. JDC (America) Corp.,* 52 F.3d 1575, 1580 (11th Cir.1995).

[9]*Moore v. Pennsylvania Castle Energy Corp.,* 89 F.3d 791, 796 (11th Cir.1996).

[10]*Key v. Allstate Ins. Co.,* 90 F.3d 1546, 1548-49 (11th Cir.1996) (citation omitted).

[11]*Tackitt v. Prudential Ins. Co. of America,* 758 F.2d 1572, 1575 (11th Cir.1985).

statute and the applicable regulations."[12]

The Director of FEMA is authorized by the Act to "define or redefine, by rules and regulations, any scientific or technical term used in this Act," and to "provide by regulation for general terms and conditions of insurability" under the National Flood Insurance Program.[13] By regulation all flood insurance offered under the National Flood Insurance Program is subject to the Act, regulations issued under the Act, and the terms and conditions of the SFIP, and all policies offered by private insurers under the WYO program must follow the form of the SFIP.[14]

FEMA is authorized by statute to create flood plain maps.[15] The undisputed summary judgment evidence shows that FEMA had created a Flood Insurance Rate Map (FIRM) covering the land where appellants homes were constructed. A FIRM is "an official map of a community," on which the Federal Insurance Administrator has delineated "special hazard areas."[16] The SFIP defines a "post-FIRM" building to include those constructed after the effective date of the initial FIRM. The SFIP defines a "base flood" as the 100-year flood, i.e. the flood "having a one percent chance of being equaled or exceeded in any given year." The property on which the homes were constructed are in special hazard area "AE" of the FIRM map,[17] with a base flood elevation of 10 to 12 feet.

In these circumstances, federal regulation requires that communities, in order to be eligible for federal flood insurance, require residential structures in zone AE to "have the lowest floor

---

[12]*Mussoline v. Morris,* 692 F.Supp. 1306, 1315 (S.D.Fla.1987).

[13]42 U.S.C. §§ 4003(b), 4013(a) (1994).

[14]44 C.F.R. §§ 61.4, 61.13(a) & (f) (1996).

[15]44 U.S.C. § 4101(a) (1994).

[16]44 C.F.R. § 59.1 (1996).

[17]*See* 44 C.F.R. § 59.1 (1996) (defining special hazard area to include those areas designated AE on FIRM).

(including basement) elevated to or above the base flood level."[18]

The evidence is undisputed that the ground floors of appellants' homes were not constructed above the base flood elevation. The ground elevation for the homes is 5 to 6 feet according to surveys. As such, the ground floors were not "elevated" as required by regulation, and federal flood insurance cannot cover damage to the ground floors, except as to those certain items excepted in article V(F) of the policy.

In addition, the Act provides that flood insurance is not available "for any property which the Director finds has been declared by a duly constituted State or local zoning authority, or other authorized public body, to be in violation of State or local laws, regulations, or ordinances which are intended to discourage or otherwise restrict land development or occupancy in flood-prone areas."[19] Communities are required to implement regulations consistent with federal regulations to qualify for insurance under the Federal Flood Insurance Program.[20] At the time of construction of the homes in issue, Dade County had a flood control ordinance in place, County Ordinance 74-48, which by its terms was intended to insure continued availability of federal flood insurance.[21] It provides that residential construction is prohibited in a "Coastal General High Flood (GFH) District" unless the new construction "has the lowest floor (including basement) elevated to or above the level of the regulatory flood (100-year flood)."[22] Appellants' homes, located in a GFH district, were in violation of this regulation, unless the "lowest floor" was above the base flood elevation. Again,

---

[18]44 C.F.R. § 60.3(c)(2) (1996).

[19]42 U.S.C. § 4023 (1994).

[20]44 C.F.R. § 59.22 (1996).

[21]Dade County, Fla., Ordinance 74-48 § 1 (1974).

[22]*Id.* § 5(a).

there cannot be full coverage for damage to the ground floors of appellants' homes, since they were not elevated above the base flood elevation as required by the county ordinance. To hold otherwise would mean that coverage is available for damage to a floor constructed below the legal elevation required by the county ordinance, in violation of the federal regulation. Appellants argue that the certificate of occupancy the homes received is proof that there was no violation of the ordinance. We cannot agree. The undisputed evidence shows that the ground floor of the townhouses was below the base flood elevation; the ordinance was violated unless it is construed to mean here that the "lowest floor" of the townhouse was higher than the ground.[23]

Appellants argue that the policies are at best ambiguous and should be construed against the insurer, since some of the declaration pages on the policies state that the homes are "non-elevated," or that the homes have "three or more floors with no basement." These declaration pages also state that the "low elevation" is 15.6 to 16 feet, the "base elevation" is 11 to 12 feet, and the "elevation difference" is 4 to 5 feet.[24]

We find this argument unavailing. The undisputed summary judgment evidence shows that the ground floors were below the base flood elevation. Under federal and state law insurance therefore was unavailable under the Federal Flood Insurance Program, except for the limited coverage provided in article V(F) of the SFIP. Indeed, if the homes are truly "non-elevated" then no federal insurance is available whatsoever, as explained above.[25] The district court in effect

---

[23]Although the district court did not rely on the county ordinance as a ground for summary judgment, we may affirm a summary judgment on any adequate ground, even if it is other than the one on which the district court relied. *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th Cir.1997). This ground for summary judgment was raised below.

[24]The declaration pages actually use abbreviations for these terms.

[25]This same conclusion was reached by a district court in ruling on another case involving a L'Hermitage townhouse. It reasoned that "[w]ere the Court to consider the building as

concluded that the floor higher than the ground should be considered the "lowest elevated floor" under the policy, providing appellants with some coverage. Appellees have accepted this ruling.

A survey in the record indicates that the ground elevation for the development was 6 feet, while the "first floor living level" was 15.67 feet. Correspondence in the record indicates that the developer was able to obtain approval from the City of Miami for construction by providing the ground floor of some units with break-away walls. Federal regulation defines an elevated building to include one elevated above ground level by "shear walls."[26] There is also a FEMA memorandum in the record, concerning L'Hermitage, and stating that after Andrew "we have determined that the buildings in this townhouse development were constructed as elevated buildings with enclosed areas at ground level," and an affidavit from a FEMA official opines that L'Hermitage "is an elevated structure and was built as an elevated structure." Construing the policy in favor of the insureds, the ground floor can be considered an "enclosure" under the SFIP, which is not covered but which would make the higher floor the "lowest elevated floor of a elevated Post-Firm building."

The references in the declaration pages to a "non-elevated" home or one with "three or more floors with no basement" cannot be construed as a promise that the ground floors of the townhouses were fully covered under the policy. The policy defines the declarations page as "a computer generated summary of information furnished by you [the insured] in the application for insurance," although appellants claim that the insurers or their agents provided the terms in the declarations page. Regardless, nowhere does the policy state that the ground floor is fully covered at whatever

---

"non-elevated,' [plaintiff] would not be entitled to any payment whatsoever on his claim, since a non-elevated post-FIRM building, located within FIRM Zone AE, violates the community flood plain management regulations mandated by the National Flood Insurance Program." *Garcia v. Omaha Property and Cas. Ins. Co.,* 933 F.Supp. 1064, 1068-69 (S.D.Fla.1995), *aff'd mem.,* 95 F.3d 58 (11th Cir.1996).

[26]44 C.F.R. § 59.1 (1996).

elevation. On the contrary, the policy states that coverage is limited to that allowed by federal regulation, as described above.

Appellants argue that Aetna and State Farm should be estopped from denying full coverage for damages to the ground floors of the townhouses. In support of this claim, appellants argue that the insurers had actual or imputed knowledge "that the ground floors of their homes were used for habitable purposes," and that the appellants relied on their declarations pages and the representations of the insurers' agents.

We have recognized as elements of equitable estoppel under federal common law that: "(1) the party to be estopped misrepresented material facts; (2) the party to be estopped was aware of the true facts; (3) the party to be estopped intended that the misrepresentation be acted on or had reason to believe the party asserting the estoppel would rely on it; (4) the party asserting the estoppel did not know, nor should it have known, the true facts; and (5) the party asserting the estoppel reasonably and detrimentally relied on the misrepresentation."[27] Further, as a general rule estoppel may not be invoked to enlarge or extend the coverage specified in an insurance contract.[28]

Assuming without deciding that federal common law recognizes an affirmative claim for relief on estoppel grounds in these circumstances,[29] we find that the elements of estoppel are not met here. We can find no evidence in the record that agents or employees of State Farm and Aetna

---

[27]*National Companies Health Benefit Plan v. St. Joseph's Hospital of Atlanta, Inc.,* 929 F.2d 1558, 1572 (11th Cir.1991).

[28]*Kane v. Aetna Life Ins.,* 893 F.2d 1283, 1285 n. 3 (11th Cir.1990).

[29]*But see* 44 C.F.R. § 61.5(i) (1991) (now codified at 44 C.F.R. § 61.5(e)) ("The standard flood insurance policy is authorized only under terms and conditions established by Federal statute, the program's regulations, the Administrator's interpretations and the express terms of the policy itself. Accordingly, representations regarding the extent and scope of coverage which are not consistent with the National Flood Insurance Act of 1968, as amended, or the Program's regulations, are void....")

assured appellants that their ground floors were entitled to full coverage under the policy. To the extent that appellants are relying on the representations, actions or knowledge of FEMA personnel, federal law provides that "WYO Companies shall not be agents of the Federal Government and are solely responsible for their obligations to their insureds under any flood insurance policies...."[30] We interpret this regulation to preclude imputing representations, knowledge, or actions of FEMA to WYO companies, or vice versa.

Assuming that the declaration pages can be attributed to State Farm and Aetna (even though the policy states that information in the declaration page is furnished by the insured), the reference in the declaration page indicating that the buildings were "non-elevated" could not lead a reasonable insured to assume that all items on all floors of the townhouses were equally covered by the policy. The policy expressly states that its coverage is limited to that allowed by federal law and regulation, and as discussed above, federal law prohibits full coverage for floors beneath the base flood elevation in a special hazard area. Further, the declaration pages indicate that the "low elevation" of the buildings is between 15 and 16 feet. A reasonable insured owning one of these seaside properties should have known that the ground floor of the townhouse was not that high, and therefore that coverage for the ground floor might not be coextensive with coverage of the upper floors.

To recapitulate:

1. These policies incorporate provisions of federal statutes and regulations. Coverage is denied residential structures unless the lowest floor is elevated above the base flood level. The policies limit coverage to enumerated property located on levels below the lowest floor and below the base flood level.

---

[30] 44 C.F.R. § 62.23(g) (1996).

2. The homes of all appellants were constructed on land only 5 or 6 feet above sea level where the base flood elevation was 10 to 12 feet above sea level. To qualify for this insurance, therefore, the lowest floor of the residence had to be constructed seven feet above ground surface. The damaged property at issue in this appeal was all below base flood elevation. The most coverage appellants can claim is what the district court awarded them: by assuming the floor above base flood level to be the first floor, awarding the limited coverage under article V(F) for property located beneath that floor. To award appellants anything, the court must ignore, as superfluous or error, the expression "non-elevated" on the declaration of some policies.

Because appellants have received the maximum to which they are entitled, their appeal is without merit.

AFFIRMED.