**Herman L. DE LA CRUZ, Plaintiff,**

v.

**BANKERS INSURANCE COMPANY,
Defendant.**

**No. 01–3743–CIV–JORDAN.**

United States District Court,
S.D. Florida,
Miami Division.

Oct. 22, 2002.

Names & Addresses, John G. Shiley, Esq., Miami, for Plaintiff.

Names & Addresses, John M. Pennekamp, Esq., Fowler White, Burnett, Hurley, Banick & Strickroot, P.A., Miami, for Defendant.

---

## Order Granting Bankers Insurance Company's Motion For Summary Judgment

JORDAN, District Judge.

For the reasons set forth below, Bankers Insurance Company's motion for summary judgment [D.E. 23] is GRANTED. A final judgment will be issued by separate order.

### Statement Of Undisputed Material Facts

Herman De La Cruz brought this suit to compel Bankers to submit to the appraisal clause found in a policy issued to him by Bankers. The dispute arose from an insurance claim filed by Mr. De La Cruz for damages sustained to his property located at 7330 NW 6th Street, Miami, Florida. At all times relevant to this dispute, Mr. De La Cruz maintained a National Flood Insurance Program (NFIP) Standard Flood Insurance Policy (SFIP) issued by Bankers, bearing policy number 09 0007831797. Bankers issued the flood insurance policy pursuant to its participation in the NFIP as a Write–Your–Own (WYO) carrier.[1]

On or about October 3, 2000, Mr. De La Cruz's property sustained damage due to heavy rains in the area. Mr. De La Cruz, through public adjuster Joseph Silver, notified Bankers of the damage. Thereafter, Bankers contacted Colonial Catastrophe Claims Corporation, which, in turn, assigned Keaton Maynard, an independent adjuster, to inspect Mr. De La Cruz's property.

A little over a month after the flooding, Mr. Maynard inspected the property along with Mr. Silver. After his inspection, Mr. Maynard prepared an itemized report, assessing damage by listing the following necessary repairs: re-grout and reseal the tile floors in the living room, dining room, and the enclosed porch; clean, strip, and wax the terrazzo floors in the bedroom; clean and disinfect the floors and walls of the enclosed porch; and clean the exterior of the property. The only items of personal property found to be damaged in Mr. Maynard's report were a washing machine, a dryer, an entertainment center, and a microwave cart. In total, Mr. Maynard found $1,678.01 worth of damage to the structure and $1,125.00 worth of damage to personal property. *See* Bankers' Memorandum in Support of Summary Judgment, Exhibit 6 [D.E. 24]. After subtracting depreciation amounts and deductibles, Mr. Maynard prepared a proof of loss statement in the amount of $1,583.26. *See id.* at Exhibit 7.

Shortly thereafter, Mr. De La Cruz submitted a signed and sworn proof of loss

---

1. Pursuant to statute, Bankers is the fiscal agent of the United States. *See* 42 U.S.C. § 4071(a)(1). Any payment under the policy is made with funds from the U.S. Treasury.

*See generally Van Holt v. Liberty Mutual Fire Ins. Co.,* 163 F.3d 161, 165 (3rd Cir.1998) (describing statutory scheme).

statement in the amount of $26,632.10. Mr. De La Cruz's proof of loss statement did not include an itemized damage report as required by the policy. *See* 44 C.F.R. Pt. 61, App. A(1), Art. 9(J)(3)(d) (1999). In response, Bankers sent a letter to Mr. De La Cruz denying the proof of loss statement because "[j]ustification for the amount being claimed has not been substantiated." Bankers' Memorandum in Support of Summary Judgment, Exhibit 9.

On or about January 2, 2001, Mr. De La Cruz submitted two itemized damage reports—one for damage to the structure and one for damage to personal property. The report addressing structural damage was prepared by Granda–Klein Enterprises, Inc. and included the following repairs: new drywall for the dining room, living room, hallway, and bedroom; prime and paint the walls and ceilings in the dining room, hallway, and bedroom; prime and paint the walls in the living room; replace most of the fixtures, including the sink, in the bathroom; replace the tile flooring in every room and on the exterior of the structure; replace the interior and exterior door units; and prime and paint the exterior of the entire structure. The damage to the structure, as reported by Granda–Klein Enterprises, was $26,803.65. *See id.* at Exhibit 10. The personal property damage report was prepared by Jag Services, Inc. and included two washing machines, two dryers, a leather sofa and loveseat, two dining room chairs, a headboard and footboard for a queen bed, and a lawn mower. Jag Services found $6,217.00 worth of damage to personal property. *See id.* at Exhibit 11.

At the same time, Mr. Silver requested that the appraisal clause of Mr. De La Cruz's policy be invoked to "fix the full amount of the value of this loss." *Id.* at Exhibit 12. Bankers rejected Mr. Silver's request to invoke the appraisal clause because "[t]he dispute in this claim involves damages sustained not the replacement cost value of the loss." *Id.* at Exhibit 13. Bankers then contacted Tony Giovanniello to reinspect the property. Despite several attempts, Mr. Giovanniello was not able to attain access to Mr. De La Cruz's property to conduct the reinspection. *Id.* at Exhibit 14. On February 14, 2001, Bankers sent a letter to Mr. Silver stating that it was closing the file on Mr. De La Cruz's claim due to a lack of cooperation in the investigation as required by federal law. *Id.* at Exhibit 15 (quoting 44 C.F.R. Pt. 61, App. A(1), Art.(9)(J)(4) (1999)). Mr. De La Cruz then filed this action seeking to compel Bankers to submit to an appraisal under the policy.

### SUMMARY JUDGMENT STANDARD

In ruling on a motion for summary judgment, a court looks to all relevant evidence submitted in the case. *See* FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The motion may be granted only if there is no genuine issue as to any material fact in the case, and if the moving party is entitled to a judgment as a matter of law. *Id.* All material conflicts and inferences must be resolved in favor of the nonmoving party. *Matsushita Elec. Ind. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Substantive law determines the materiality of a dispute. Only disputes that may affect the outcome of the case give rise to a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### ANALYSIS

█ The terms of the SFIP are set by federal regulations. *See* 44 C.F.R.

§ 61.1 *et seq.* "[F]ederal common and statutory law preempts state principles of contracts law for purposes of the interpretation of NFIP policies ...." *Berger v. Pierce,* 933 F.2d 393, 397 (6th Cir.1991). *See Carneiro Da Cunha v. Standard Fire Ins. Co./Aetna Flood Ins. Program,* 129 F.3d 581, 584 (11th Cir.1997). Federal common law applies standard insurance law principles in the interpretation of those policies. *See Carneiro Da Cunha,* 129 F.3d at 584. Under standard insurance law principles, courts must first examine the natural and plain language of the policy. *See id.* at 585. Furthermore, "the provisions of an insurance policy issued pursuant to a federal program must be strictly construed and enforced." *Gowland v. Aetna,* 143 F.3d 951, 954 (5th Cir. 1998). Any ambiguities resulting from a plain reading of the policy should be construed against the insurer. At the same time, just because some interpretation of the language of the policy is required does not mean that an ambiguity exists. *See Carneiro Da Cunha,* 129 F.3d at 585.

The appraisal clause of the SFIP issued to Mr. De La Cruz states:

> If at any time after a loss, we are unable to agree with you as to the actual cash value or, if applicable, replacement cost of the damaged property so as to determine the amount of loss to be paid to you, then, on the written demand of either one of us, each of us shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing, after 15 days, to agree upon such umpire, then on your request or our

request, such umpire shall be selected by a judge of a court of record in the State in which the insured property is located. The appraisers shall then appraise the loss, stating separately replacement cost, actual cost value and loss to each item; and failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two (appraisers or appraiser and umpire) when filed with us shall determine the amount of actual cash value and loss or, should this policy's replacement cost provisions apply, the amount of replacement cost and loss. Each appraiser shall be paid by the party selecting him or her and the expenses of appraisal and umpire shall be paid by both of us equally.

SFIP, 44 CFR Pt. 61, App. A(1), Art. 9(N) (1999).

Under Article 2 of the regulations "actual cash value" is defined as "the replacement cost of an insured *item of property* at the time of loss, less the value of physical depreciation as to the item damaged." *Id.* at Art. 2 (emphasis added). Replacement cost, as referred to by the appraisal clause, is defined in Article 8. The replacement cost provision is applicable only if "the total amount of insurance applicable to the dwelling is 80% or more of the full replacement cost of such dwelling ...." *Id.* at Art. 8(A). It is undisputed that the insurance claim in question here is less than 80% of the cost of the dwelling.[2] The appraisal clause, therefore, can only be invoked to resolve disagreements over "actual cash value."

The question here is what kind of dispute would qualify as a dispute over the

---

2. In his proof of loss statement Mr. De La Cruz listed the value of the building plus personal property as $201,125.00, with damages of $27,632.10.

"replacement cost of an insured item of property" (the definition of "actual cash value") so as to allow invocation of the appraisal clause. There are three possible disputes that could be covered by this language. The first would be a dispute where both parties agree on the items damaged and the severity of damage suffered to those items but disagree on the actual value placed upon those items. This, essentially, is a dispute over how much an item is worth. The second would be a dispute over how badly an item was damaged or what damage was done to an item. In this scenario, the parties agree on the items damaged but disagree over how to properly repair or replace them. The third would be a dispute over what items were actually damaged, or more specifically, what items were actually damaged by flooding, bringing the items within the ambit of the policy.

The first category of dispute—a dispute over how much something is worth—clearly invokes the appraisal clause under a plain reading of the policy. The items are not in dispute; only the value placed upon them is at issue. This scenario would easily fit within the "replacement cost of an insured item of property."

Likewise, the second category of dispute—a dispute over how badly an item was damaged or what damage was done to the item—fits within the appraisal clause through a simple interpretation of the plain and natural language of the policy. The SFIP is mostly silent as to what degree of repair is required. Although Article 8 defines when complete replacement of the property itself is required, there is no clear articulated standard set forth within the SFIP for determining when a damaged item requires replacement. At the same time, the definition of "actual

cost value" goes beyond the value of the item or the repair cost of the item to the "replacement cost" of that item. The same analysis necessary to fix the value of an item lends itself to determining whether that same item can be returned to its original value and what means are necessary to return it to that value. I conclude, therefore, that the appraisal clause can be invoked to resolve the second category of dispute between a policyholder and an insurer.

In contrast, the third category of dispute—a dispute over what was damaged or in what way it was damaged—falls outside the appraisal clause. The appraisal clause can only be invoked when the parties cannot agree as to the actual cash value, or, as defined by the policy, the parties cannot agree as to the replacement cost of an insured item of property. This language cannot be stretched to mean that appraisal can be invoked whenever the parties dispute which items of property were damaged or whether those items were in fact damaged by flood waters. That type of dispute is a dispute over coverage, and under the terms of the SFIP such a dispute can only be resolved by a federal district court. *See Hairston v. Travelers Cas. & Sur. Co.*, 232 F.3d 1348, 1350–51 (11th Cir.2000). *See also* SFIP, 44 C.F.R. Pt. 61, App. A(1), IV(R) (2001) ("You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy. If you do sue, you must start the suit within one year after the date of the written denial of *all or part of the claim*, and you must file the suit in the United States District Court of the district in which the covered property was located at the time of loss. This requirement applies to *any claim* that you may have under this policy and to any dispute that you may have arising out of

the handling of any claim under the policy.") (emphasis added); 42 U.S.C. § 4072 (". . . [T]he claimant, within one year . . . of notice of disallowance or *partial disallowance* . . . may institute an action . . . on such claim in the United States district court for the district in which the insured property . . . shall have been situated, and exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in controversy.") (emphasis added); *State Bank of Coloma v. National Flood Ins. Program*, 851 F.2d 817, 819 (6th Cir.1988) (letter offering a 50% compromise of insureds' flood damage claim constituted a partial disallowance within meaning of § 4072, thereby allowing insured to file suit within one year).

■ In the present case, Mr. De La Cruz is clearly contesting what was damaged. In the initial report filed by Mr. Maynard, the only items listed as damaged were the tile floors in the living room, dining room, bedroom, and the enclosed porch; the walls in the enclosed porch; the exterior walls; a washer; a dryer; an entertainment center; and a microwave cart. *See* Bankers' Memorandum in Support of Summary Judgment, Exhibit 6. In contrast, the itemized report submitted by Mr. De La Cruz included damage to these items as well as damage to a variety of other items, including the walls in all rooms, windows and doors, outlets, ceilings, a sink, a faucet, a medicine cabinet, a toilet, and a variety of miscellaneous furniture and goods. *See id.* at Exhibits 10 & 11. Although Mr. De La Cruz did challenge the extent of the damage to the items listed in Mr. Maynard's report, by

requesting compensation for items not on Mr. Maynard's report Mr. De La Cruz removed his dispute from the second category of dispute and placed it outside the ambit of the appraisal clause.

The reading of the appraisal clause urged by Mr. De La Cruz would effectively mean that appraisal could be invoked by any party as to any dispute or controversy whatsoever and would leave the limiting language in the clause—"actual cash value" or "replacement cost of an insured item of property"—without any effect. In essence, Mr. De La Cruz's position is that if the parties agree that there was a covered loss of some kind, then appraisal can be invoked not only to determine the amount of damage to particular portions of a structure and items, but also to determine whether the loss includes additional damage to different portions of the structure and to different items. In other words, Mr. De La Cruz says that the appraisal clause can be invoked to determine not only disputed amounts as to specific covered losses, but also to resolve disputed issues of causation (i.e., whether a particular peril (e.g., a flood) caused certain damage).

I do not agree with Mr. De La Cruz's interpretation. Although some state cases support his view, *see, e.g., Gonzalez v. State Farm Cas. Co.*, 805 So.2d 814, 816 (Fla. 3d DCA 2000), those cases are not binding where the interpretation of an SFIP is at issue. The better reading of the appraisal clause is that appraisal can be invoked only where the parties agree about what items are covered by the policy (what the covered loss is) but differ on the value or cost of these items.[3] To use an

---

**3.** Thus, Mr. De La Cruz could have invoked the appraisal clause to resolve a dispute with

Bankers as to the cost of the damage to the tile floors in the living room, dining room,

example, assume that an SFIP covers a 3–story home. After a flood, the insurer finds—contrary to what the insured asserts—that there was damage to the structure and to items on the fist floor of the home, but that there was no damage whatsoever caused by the flood to the second or third floors. If Mr. De La Cruz is correct, then the insured could invoke the appraisal clause to resolve the dispute concerning the issue of causation *vel non* as to the second and third floors. I simply do not believe that the appraisal clause can be read so broadly given the strict construction principle applicable to flood policies like the one here and the exclusive jurisdiction vested in district courts to resolve claim denials—whether complete or partial.

There is a dearth of authority on this issue, but in *Durkin v. Federal Emergency Management Agency*, Civ.A.No.86–4728, 1987 WL 14935 (E.D.La. July 27, 1987), a case cited by both parties, the district court reached a similar interpretation. It held that the appraisal clause in an SFIP was not invoked where the insurer found no damage done by flooding and the insured claimed damages. The court explained that the appraisal clause was not applicable where the insurer "has determined plaintiff suffered no loss . . . ." *Id.* at *3 (internal quotations omitted). In other words, a dispute over whether there was any damage at all is outside the ambit of the appraisal clause. In the same respect, I find that disputes over what was damaged do not fall within the ambit of the appraisal clause.

### CONCLUSION

Mr. De La Cruz does not seek substantive redress—i.e., a determination of coverage or a determination of the amount of loss—in this court. The only relief sought is enforcement of the appraisal clause. As I interpret the appraisal clause, it is unavailable to Mr. De La Cruz under the facts presented. Bankers is entitled to summary judgment.

---

bedroom, and the enclosed porch; the walls in the enclosed porch; the exterior walls; a washer; a dryer; an entertainment center; and a microwave cart—the items which were found to constitute a covered loss by Mr. Maynard.