[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-17081
Non-Argument Calendar

_____

D.C. Docket No. 1:16-cv-20517-JAL

CYNTHIA DAVIS,
LESLIE MAYBERRY,
DIANE TUCKER,
ANA SANTA ANA,
CARMEL TAYLOR, et al.,

Plaintiffs - Appellants,

versus

VALSAMIS, INC.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 30, 2018)

Before WILSON, HULL, and JULIE CARNES, Circuit Judges.

PER CURIAM:

In this maritime tort action, Plaintiffs, a group of more than 100 former co-passengers on an ill-fated sailing of the cruise ship Carnival Triumph, appeal the district court's grant of Defendant Valsamis, Inc.'s motion for summary judgment. The district court held that Plaintiffs' failure to notify Defendant of their personal injury claims within 185 days, as required by a notice provision in their ticket contract, barred Plaintiffs' claims that Defendant's negligence caused a fire, resulting in harm to Plaintiffs. After careful review, we affirm.

## I.    BACKGROUND

### A.    Factual Background

#### 1.    The Ill-Fated Sailing of the Carnival Triumph

On February 7, 2013, Plaintiffs embarked on a cruise aboard the Carnival Triumph, a ship owned by Carnival Cruise Lines ("Carnival"). Carnival hired Defendant to maintain the ship's engines and generators.

During Plaintiffs' voyage, a fire in the ship's engine room disabled the ship, stranding its passengers and crew in the Gulf of Mexico. The fire caused a power outage. The power outage prevented toilets, refrigerators, air conditioners, and other electrical systems from working. The failure of those electrical systems caused living conditions aboard the ship to deteriorate. The unsatisfactory living conditions caused passengers discomfort and distress.

2

2.    The Carnival Ticket Contract

Each Carnival Triumph passenger is bound by a Carnival ticket contract. Carnival's ticket contract contains provisions limiting passenger rights to assert claims arising from injuries sustained as a Carnival guest.  The ticket contract alerts passengers of those restrictions on the first page in bold, capital letters:

> **IMPORTANT NOTICE TO GUESTS THIS DOCUMENT IS A LEGALLY BINDING CONTRACT ISSUED BY CARNIVAL CRUISE LINES TO, AND ACCEPTED BY, GUEST SUBJECT TO THE IMPORTANT TERMS AND CONDITIONS APPEARING BELOW.**
>
> **NOTICE:  THE ATTENTION OF GUESTS IS ESPECIALLY DIRECTED TO CLAUSES 1, 4 AND 10 THROUGH 13, WHICH CONTAIN IMPORTANT LIMITATIONS ON THE RIGHTS OF GUESTS TO ASSERT CLAIMS AGAINST CARNIVAL CRUISE LINES, THE VESSEL, THEIR AGENTS AND EMPLOYEES, AND OTHERS, INCLUDING FORUM SELECTION, ARBITRATION AND WAIVER OF JURY TRIAL FOR CERTAIN CLAIMS.**

One such limitation on the rights of guests to assert claims against Carnival is a requirement to give timely notice of their personal injury claims.  As stated in Clause 12(a):

> Carnival shall not be liable for any claims whatsoever for personal injury, illness or death of the guest, unless full particulars in writing are given to Carnival within 185 days after the date of the injury, event illness or death giving rise to the claim.  Suit to recover on any such claim shall not be maintainable unless filed within one year after the date of the injury, event, illness or death, and unless served on Carnival within 120 days after filing.  Guest expressly waives all other potentially applicable state or federal limitations periods.

3

Clause 1(f) is a "Himalaya" Clause[1] that extends Carnival's rights, like the 185-day notice requirement of Clause 12(a), to certain other potential defendants:

> All rights, exemptions from liability, defenses and immunities of Carnival under this contract shall also inure to the benefit of Carnival's facilities, whether at sea or ashore, servants, agents, managers, affiliated or related companies, suppliers, shipbuilders and manufacturers of component parts and independent contractors, including, but not limited to, shore excursion or tour operations, ship's physician, ship's nurse, retail shop personnel, health and beauty staff, fitness staff, video diary staff, and other concessionaires, who shall have no liability to the Guest, either in contract or in tort, which is greater than or different from that of Carnival.

## B.    Procedural History

On July 24, 2013, within the 185-day notice period of Clause 12(a), 31 passengers notified Carnival of their personal injury claims arising from their experience aboard the Carnival Triumph.  None of the current Plaintiffs notified Defendant of their claim at that time.

Having failed to provide the required advance notice, Plaintiffs filed suit against Defendant on February 9, 2014, nearly one year after their return to port aboard the Carnival Triumph.[2]  Plaintiffs allege that Defendant:  (1) negligently maintained the ship's engines and generators; and (2) negligently designed,

---

[1]  Himalaya Clauses extend liability limitations to downstream parties and take their name from an English case involving a steamship called *Himalaya.  Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 20 n.2 (2004).

[2]  Plaintiffs filed suit in the United States District Court for the Southern District of Texas.  The court transferred the case to the United States District Court for the Southern District of Florida on Defendant's motion to enforce the forum-selection clause in the ticket contract.

manufactured and/or constructed insulation panels, fuel pipe covers, T-shaped structures, and other apparatuses installed on the diesel generators to reduce the temperature of existing hot spots on the ship's engines.  Plaintiffs claim that Defendant's negligence caused the fire which disabled the ship and left them stranded at sea for days in undesirable conditions, causing them physical and emotional injuries.

Defendant moved for summary judgment, asserting that Clause 12(a) of the ticket contract barred Plaintiffs' claims because they failed to notify Defendant of their claims within the required 185 days.  The court found that Defendant qualified as a "manufacturer of component parts" or an "independent contractor" within the meaning of the Himalaya Clause and was, therefore, entitled to receive notice of Plaintiffs' claims as specified in Clause 12(a).  The court further found that:  (1) Plaintiffs did not provide the required notice to Defendant; (2) notice to Carnival was insufficient under Clause 12(a) as properly interpreted; and (3) 46 U.S.C. § 30508 did not excuse their failure to provide notice because Plaintiffs produced no evidence that Defendant knew of their claims or was not prejudiced by their failure to give notice within 185 days.  The court granted summary judgment for Defendant, holding that Plaintiffs' claims are barred by Clause 12 of the ticket contract.

Plaintiffs appeal, arguing that they satisfied their contractual obligations by providing notice of their claims to Carnival and that 46 U.S.C. § 30508 excuses any failure to provide sufficient notice.

## II.    DISCUSSION

### A.    Standard of Review

This Court reviews a district court's grant of summary judgment *de novo,* applying the same legal standards as the district court.  *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc).  A grant of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In making this determination, we view all evidence and make all reasonable inferences in favor of the non-moving party.  *Chapman*, 229 F.3d at 1023.

"[C]ontract interpretation is generally a question of law."  *Underwriters at Lloyds Subscribing to Cover Note B0753PC1308275000 v. Expeditors Korea Ltd.*, 882 F.3d 1033, 1039 (11th Cir. 2018) (quoting *Lawyers Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995)).  "The question of whether a contract is ambiguous is a question of law that we review *de novo*."  *Id.* (citing *Carneiro Da Cunha v. Standard Fire Ins. Co./Aetna Flood Ins. Program*, 129 F.3d 581, 584–85 (11th Cir. 1997)).

6

**B.    Federal Maritime Law:  Rules of Contract Interpretation**

Plaintiffs' ticket constitutes a maritime contract because its primary objective is to accomplish the transportation of passengers by sea.  *Norfolk S. Ry.*, 543 U.S. at 24.  "Drawn from state and federal sources, the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules."  *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864–65 (1986) (citations omitted).  "When a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation." *Norfolk S. Ry.*, 543 U.S. at 22–23; *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590 (1991) (enforceability of forum-selection clause in cruise ticket presented a case in admiralty governed by federal law).  "Specifically, our interpretation of maritime contracts sounds in federal common law, so we look to the general common law of contracts."  *Internaves de Mexico s.a. de C.V. v. Andromeda Steamship Corp.*, --F.3d--, --, 2018 WL 3636427, at *3 (11th Cir. Aug. 1, 2018).

Maritime contracts "must be construed like any other contracts:  by their terms and consistent with the intent of the parties."  *Norfolk S. Ry. Co.*, 543 U.S. at 31.  Under general principles of contract interpretation, "[t]he plain meaning of a contract's language governs its interpretation."  *In re FFS Data, Inc.*, 776 F.3d 1299, 1305 (11th Cir. 2015) (internal quotation marks omitted).  "[A] document should be read to give effect to all its provisions and to render them consistent with

each other." *Id.* (internal quotation marks omitted) (citing Restatement (Second) of Contracts § 203(a) (Am. Law. Inst. 1981)).  "The elementary canon of interpretation is, not that particular words may be isolatedly considered, but that the whole contract must be brought into view and interpreted with reference to the nature of the obligations between the parties, and the intention which they have manifested in forming them." *O'Brien v. Miller*, 168 U.S. 287, 297 (1897).  Thus, courts look to "the contract as a whole to determine whether it unambiguously states the parties' intentions." *Sander v. Alexander Richardson Invs.*, 334 F.3d 712, 716 (8th Cir. 2003); *Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1104 (11th Cir. 2014) ("Traditional contract-interpretation principles make contract interpretation a question of law, decided by reading the words of a contract in the context of the entire contract and construing the contract to effectuate the parties' intent.").  A contract provision is ambiguous if it "is susceptible to two or more reasonable interpretations that can fairly be made." *Dahl-Eimers v. Mut. of Omaha Life Ins. Co.*, 986 F.2d 1379, 1381 (11th Cir. 1993); *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 179 (2d Cir. 2014) (maritime contract is ambiguous "where it is susceptible of two reasonable and practical interpretations") (internal quotation marks omitted).  An ambiguous provision in a maritime contract is interpreted against the drafter. *Edward Leasing Corp. v. Uhlig & Assoc. Inc.*, 785 F.2d 877, 889 (11th Cir. 1986).

8

**C.    The District Court Properly Granted Summary Judgment for Defendant**

Plaintiffs assert the district court erroneously granted summary judgment on the legally flawed conclusion that the ticket contract entitled Defendant to receive notice of Plaintiffs' injuries within 185 days.  This case warrants summary judgment only if:  (1) Defendant qualifies to exercise the protections afforded by the Himalaya Clause; (2) Clause 12(a) requires Plaintiffs to provide notice of their claims to Defendant, as opposed to Carnival; and (3) 46 U.S.C. § 30508 does not excuse Plaintiffs' failure to provide such notice to Defendant.  We address each issue in turn.

1.    Defendant Qualifies to Exercise the Rights Conferred by the Himalaya Clause

The ticket contract permits Defendant to assert the right to notice under Clause 12(a) only if the Himalaya Clause extends that right to Defendant.  The Himalaya Clause states that "[a]ll rights, exemptions from liability, defenses and immunities of Carnival under this contract shall also inure to the benefit of Carnival's . . . suppliers, shipbuilders and manufacturers of component parts and independent contractors."  Plaintiffs maintain that "Defendant was hired, retained and otherwise authorized by Carnival to perform maintenance on the [Carnival Triumph], in particular its engines and diesel generators, and equipment appurtenant thereto."  Plaintiffs further contend that Defendant "designed,

9

manufactured, and/or constructed insulation panels fuel pipe covers, T-shaped structures and other apparatuses that the company installed on diesel generators and in other places in order to reduce the temperature of existing hot spots on the [ship's] engines." The services performed by Defendant indisputably make Defendant a supplier, manufacturer of component parts, or an independent contractor, as those terms are ordinarily defined.

We find Plaintiffs' argument that the Himalaya Clause is ambiguous because it fails to define the term "independent contractor" unpersuasive. First, Defendant qualifies to receive the rights conferred by the Himalaya Clause as a "supplier" or "manufacturer of component parts" for the Carnival Triumph. Our holding is not dependent on characterizing Defendant as an independent contractor.

Second, unlike the bill of ladings in the cases cited by Plaintiffs, the ticket contract here unambiguously defines the independent contractors receiving extended rights—those contractors employed by Carnival. *See La Salle Mach. Tool, Inc. v. Maher Terminals, Inc.*, 611 F.2d 56, 60 (4th Cir. 1979) (finding provision of bill of lading extending liability limitation to independent contractor "ambiguous because it does not indicate Whose agents and independent contractors are meant" and holding terminal operator not covered by that provision where terminal operator was "not clearly acting as an independent contractor of the carrier"); *Caterpillar Overseas, S.A. v. Farrell Lines, Inc.*, 1988 A.M.C. 2894,

10

2895 (E.D. Va. Apr. 28, 1988), *aff'd sub nom.*, *Caterpillar Overseas, S.A. v. Marine Transp. Inc.*, 900 F.2d 714 (4th Cir. 1990) (relying on *La Salle Machine Tool* and holding that Himalaya Clause extending ocean carrier's liability limitations to "all independent contractors" did not unambiguously apply to an interstate trucking company not engaged in normal maritime operations).  This is not a case like those cited where defendant's relationship to the contracting party was tangential or uncertain or defendant was engaged in non-maritime activity that one would not reasonably expect to be covered by the contract.  Plaintiffs acknowledge that "Defendant was hired, retained and otherwise authorized by Carnival to perform maintenance on the [Carnival Triumph]."  That Defendant is an independent contractor of Carnival engaged in normal maritime activity requires no speculation.  Defendant is squarely within the reasonable scope of the Himalaya Clause.

Plaintiffs contend that the Himalaya Clause should be strictly construed to exclude Defendant because "Carnival's passenger ticket is plainly intended to govern the carriage of passengers on holiday cruises and protect those providing services to Carnival with respect [to] matters immediately affecting the cruise," i.e. ship personnel and shore excursion or tour operators.  But the second paragraph in the ticket contract boldly declares in all capital letters that the contract imposes "**IMPORTANT LIMITATIONS ON THE RIGHTS OF GUESTS TO**

11

**ASSERT CLAIMS AGAINST CARNIVAL CRUISE LINES, THE VESSEL, THEIR AGENTS AND EMPLOYEES, <u>AND OTHERS</u>**" (underline added). That same bolded and capitalized paragraph specifically directs passengers to Clause 1, containing the Himalaya Clause, and Clause 12, containing the notice provision. The Himalaya Clause extends rights to suppliers, shipbuilders, and manufacturers of component parts, as well as independent contractors. Thus, the ticket contract expressly and conspicuously limits the liability of those not directly providing services to passengers while on the cruise. *See Estate of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1246 (11th Cir. 2012) (concluding that the physical characteristics of the warning in ticket contract were sufficient to reasonably communicate a forum-selection clause to passengers). Moreover, if Plaintiffs' allegations prove true, one can hardly imagine how Defendant's conduct did not "immediately affect[] the cruise," the ambiguous standard Plaintiffs urge us to adopt.

We also reject Plaintiffs' argument that extending notice rights to Defendant "is poor public policy because it disrupts the uniformity of maritime law reflected in the uniform three-year statute of limitations for maritime tort." Section 30106 of Title 46 of the United States Code establishes a three-year statute of limitations for bringing a civil action for damages for personal injury arising out of a maritime tort. It does not prohibit parties from contractually shortening that limitations

12

period.  Instead, 46 U.S.C. § 30508 permits a shipowner to contractually require notice of personal injury in as little as six months and to require an action be brought in one year.  46 U.S.C. § 30508(b).  The provisions at issue here comply with the notice and filing limitations permitted by § 30508[3] and do not "contravene an act of Congress" or "prejudice the characteristic features of maritime law."  Whether these congressionally sanctioned limitations constitute "poor public policy," as Plaintiffs contend, is not for us to decide.

The ticket contract here differs markedly from the contracts evaluated in Plaintiffs' cited district court cases declining to extend contractual liability limitations to others.  In *Sharpe v. West Indian Company, Ltd.*, the district court held that a clause purporting to extend a cruise line's exclusions and limitations to owners of shoreside properties was overbroad and ambiguous because it extended to shoreline properties that have no connection to the cruise line.  *Sharpe v. W. Indian Co., Ltd.*, 118 F. Supp. 2d 646, 653 (D.V.I. 2000).  The Himalaya Clause here, however, is expressly limited to "Carnival's . . . independent contractors."  Likewise, in *Stotesbury v. Pirate Duck Adventure, LLC*, the district court held that a ticket contract did not reasonably communicate that suits against independent contractors are subject to a one-year limitations period because the language

---

[3]  Plaintiff concedes that "this statute allows a vessel transporting passengers . . . between ports in the U.S. and a port in a foreign country to limit its liability through clauses such as used by Carnival's ticket."

13

extending the limitations period was buried in fine print in a section not highlighted by the contract. *Stotesbury v. Pirate Duck Adventure, LLC*, No. 3:11-CV-00018, 2013 WL 3199353, at \*3 (D.V.I. June 25, 2013).  The ticket contract here alerts passengers to the specific provisions limiting independent contractor liability in bolded capitalized letters in the second paragraph of the contract.

Even when strictly construed, the ticket contract unambiguously extends the rights afforded Carnival to Carnival's suppliers, manufacturers, and independent contractors, like Defendant, and reasonably communicates that fact to passengers. In particular, the ticket contract entitles Defendant to the notice rights provided in Clause 12(a).

### 2.　The Notice Provision of the Ticket Contract Entitles Defendant to Receive Notice of Plaintiffs' Claims within 185 Days

Having concluded that the Himalaya Clause extends the notice rights of Clause 12(a) to Defendant, we now endeavor to discern what right the notice provision actually confers:  the right for the alleged offending party to receive notice of claims, or the right to have Carnival notified of claims?  Plaintiffs argue that Clause 12(a) requires only that Carnival be notified of Plaintiffs' claims, even when Carnival is not accused of wrongdoing and is not a party to the suit.  We disagree.

The application of general principles of contract interpretation yields the conclusion that the ticket contract requires Plaintiffs to provide notice of their

14

claims to the alleged offending party.  The notice provision states:  "Carnival shall not be liable for any claims whatsoever for personal injury, illness or death of the guest, unless full particulars in writing are given to Carnival within 185 days after the date of the injury, event illness or death giving rise to the claim."  Clause 12(a) grants Carnival the right to be notified of the full particulars of claims against them within 185 days of the date of injury.  The Himalaya Clause grants Defendant that same right:  "[a]ll rights, exemptions from liability, defenses and immunities of Carnival under this contract *shall* also inure to the benefit of [Defendant]."  Viewing the contract as a whole, as we must, Clause 12(a) clearly expresses the intent to bar suit unless notice of a claim is timely provided to the offending party.  Since the clause defines Carnival's rights, the clause identifies Carnival as the offending party.  But when Carnival's right is extended to others, the clear intent is for that party to receive notice of the claim.  The specific recitation in the Himalaya Clause that Defendant shall have all of Carnival's rights and shall not have any liability different from that of Carnival renders unreasonable any interpretation of the notice provision that holds Defendant liable without receiving notice of Plaintiffs' claims within the allotted time.[4]

---

[4]  We note that, even if we held that notice to Carnival complied with the ticket contract, the only evidence cited by Plaintiff to establish notice to Carnival is a letter from Carnival acknowledging receipt of a letter from counsel on behalf of 31 Carnival Triumph passengers.  Plaintiffs submitted no evidence of an attempt to notify Carnival of injuries sustained by any of the remainder of the more than 100 Plaintiffs in this case, much less evidence demonstrating that

15

Plaintiffs' argument that the right conferred by the notice provision of Clause 12(a) is merely the right to have Carnival receive notice does not provide Defendant "[a]ll rights" Carnival has under the contract, as required by the Himalaya Clause. Plaintiffs' construction results in a different right being afforded Defendant (i.e. the right for a third-party to receive notice of claims) than that possessed by Carnival (i.e. the right to actually receive notice of claims). Under Plaintiffs' construction, Defendant faces liability without receiving timely notice of claims against it where Carnival would be exempt from liability absent receiving notice. Plaintiffs' construction does not give full effect to the Himalaya Clause, which extends "all rights" of Carnival to Defendant and expressly states that Defendant "shall have no liability to the Guest, either in contract or in tort, which is greater than or different from that of Carnival." "[A contract] should be read to give effect to all its provisions and to render them consistent with each other." *In re FFS Data, Inc.*, 776 F.3d at 1305 (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995)). Accordingly, we find that the notice provision unambiguously requires notice be provided to Defendant.

That Clause 12(a) also bars liability for any suit "unless served on Carnival within 120 days after filing" provides another indication that "Carnival" as used in Clause 12(a) refers to the offending party. Reading that provision to require

---

each Plaintiff submitted the "full particulars" of their claims to Carnival. That said, for purposes of this ruling, we assume that Carnival received notice that was compliant with the contract.

service of a suit on Carnival when it is not a party to that suit is neither reasonable nor sensible. *See Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 117 F.3d 1328, 1338 (11th Cir. 1997) ("[A]n interpretation which gives a reasonable meaning to all provisions of a contract is preferred to one which leaves a part useless or inexplicable.") (internal quotation marks omitted). Moreover, nothing in the ticket contract suggests that "Carnival" as used in the notice provision should be read differently from "Carnival" as used in other parts of Clause 12, and other provisions exempting Carnival from liability. The only reasonable consistent interpretation is that "Carnival" in Clause 12(a) refers to the offending party when the relevant liability limiting rights are being exercised by those extended protection under the Himalaya Clause.

Plaintiffs argue that Clause 12(a) of the ticket contract fails to reasonably communicate that the 185-day pre-suit written notice provision must be given to Defendant and not to Carnival. We are unpersuaded. As we see it, Clause 12(a) clearly expresses the intent that notice of claims be provided to the offending party and no reason exists to contravene the Himalaya Clause's express grant of that right to Defendant.[5] *Norfolk S. Ry. Co.*, 543 U.S. at 31–32 (citing *Green v. Biddle*, 8 Wheat. 1, 89–90, 5 L.Ed. 547 (1823) ("[W]here the words of a . . . contract, have

---

[5] That Defendant's "claims contact information is absent from the passenger ticket" does not compel a different conclusion. The ticket contract does not contain "claims contact information" for Carnival either. Moreover, such information is available through the exercise of ordinary diligence, as Plaintiffs demonstrated in filing this action.

a plain and obvious meaning, all construction, in hostility with such meaning, is excluded")).

The only reasonable interpretation of the notice provision consistent with the entirety of Clause 12(a), and the ticket contract as a whole, is that it requires notice of claims be provided to those being sued. Any ambiguity caused by the reference to "Carnival" when reading the notice provision of Clause 12(a) in isolation cannot undermine the manifest intent to provide all of Carnival's rights, exemptions from liability, defenses and immunities, including the right to receive notice of claims, to those extended protections by the Himalaya Clause. *Internaves de Mexico s.a. de C.V.*, --F.3d at --, 2018 WL 3636427, at *3.

> ### 3.    Plaintiffs Failed to Demonstrate that 46 U.S.C. § 30508 Excuses Their Non-Compliance with the Notice Provision

Plaintiffs argue that under § 30508(c) Defendant must prove prejudice from lack of notice for the notice provision of the ticket contract to bar their claims. Section 30508(c) states: "When notice of a claim for personal injury or death is required by a contract, the failure to give the notice is not a bar to recovery if—(1) the court finds that the owner, master, or agent of the vessel had knowledge of the injury or death and the owner has not been prejudiced by the failure . . . ."

Plaintiffs offered no evidence to prove that Defendant had knowledge of their injuries. Defendant, however, submitted the Declaration of Dimitrios Valsamis, Defendant's President, stating that "[Defendant] had no knowledge of

18

Plaintiffs' alleged injuries/illnesses until Plaintiffs filed their Original Complaint . . . on February 9, 2014." Plaintiffs failed to rebut this declaration or otherwise offer admissible evidence raising a genuine issue of material fact concerning Defendant's knowledge of Plaintiffs' injuries.[6] Consequently, Plaintiffs' failure to comply with the notice requirement cannot be excused.[7] *See Shankles v. Costa Armatori, S.P.A.*, 722 F.2d 861, 867–68 (1st Cir. 1983) (declining to excuse plaintiff's failure to provide contractually required notice where plaintiff did not controvert affidavit accompanying defendant's motion for summary judgment, which stated that defendant had never received notice of her claim for personal injuries).

---

[6] Contrary to Plaintiffs' argument, Defendant's knowledge of Plaintiffs' injuries via news accounts of what Plaintiffs deem the "CARNIVAL TRIUMPH 2013 cruise debacle" is not an adjudicative fact of which we can take judicial notice. Fed. R. Evid. 201. "Judicial notice is a means by which adjudicative facts not seriously open to dispute are established as true without the normal requirement of proof by evidence." *Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC*, 369 F.3d 1197, 1204 (11th Cir. 2004). What Defendant knew and when are not generally known and cannot accurately and readily be determined from reliable sources. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (stating that judicial notice is appropriate if the fact is "one that only an unreasonable person would insist on disputing" and declining to take judicial notice that a defendant "refused to come to work.") Moreover, Plaintiffs submitted no evidence of the "widely known and exhaustive" news coverage that would permit us to authoritatively conclude that such coverage existed, much less that Defendant indisputably received knowledge of these particular Plaintiffs' injuries through the news.

[7] Plaintiffs' argument that notice to Carnival is sufficient under § 30508(c) fails for the reasons already expressed in rejecting this same argument in connection with the notice provision. Defendant is entitled to the same rights as Carnival and Plaintiffs failure to provide notice of their injuries to Defendant may be excused under § 30508 only if Defendant had knowledge of their injuries and was not prejudiced from the lack of notice. Applying 46 U.S.C. § 30508 in the manner suggested by Plaintiffs would result in the illogical evaluation of whether a party not being sued was prejudiced by Plaintiffs' failure to notify them of injuries caused by another.

19

## III.    CONCLUSION

For the reasons explained above, we **AFFIRM** the decision of the district

court.